[Crim. No. 4309. In Bank.—November 29, 1940.]

THE PEOPLE, Respondent, v. R. W. AGNEW, Appellant.

R. W. Agnew, *in pro. per.*, and Cantillon & Glover and Thomas B. Sawyer for Appellant.

Earl Warren, Attorney-General, and R. S. McLaughlin, Deputy Attorney-General, for Respondent.

SPENCE, J., *pro tem.*—Defendant was charged in three counts, the third count charging false imprisonment by violence, menace, fraud and deceit, a violation of sections 236 and 237 of the Penal Code. He was acquitted on the first two counts but was found guilty on the third count of false imprisonment, a misdemeanor, being a lesser offense included in the charge contained in said third count. He was sentenced to six months imprisonment in the county jail and he appeals from the judgment of conviction and the order denying his motion for a new trial.

This prosecution was the aftermath of certain business dealings and litigation between defendant and Willis O. Prouty, the prosecuting witness. Mr. Prouty was the president of a manufacturing concern at Manhattan Beach. Defendant arranged with Mr. Prouty to purchase some second hand transformers and signs which were located in the yard of the manufacturing concern. Defendant made numerous trips to the yard for the purpose of loading and transporting the purchased articles but was finally refused further admission to the yard by Mr. Prouty because Mr. Prouty had received information to the effect that defendant had taken from the yard numerous articles which were not included in the purchase. Thereafter defendant brought a civil action claiming that certain of the purchased articles had been detained by Mr. Prouty. A cross-complaint was filed alleging conversion by defendant herein of articles not included in the purchase. Said action resulted in a judgment against defendant herein on the cross-complaint in the sum of $566. Several days after the trial of said action, defendant purported to make a so-called citizen's arrest of Mr. Prouty under section 837 of the Penal Code, claiming that Mr. Prouty had committed perjury in the civil action. Mr. Prouty was detained for a time but was subsequently released. This prosecution for false imprisonment followed.

Upon this appeal, defendant contends (1) that the evidence was insufficient to sustain his conviction; (2) that the trial court committed prejudicial error in giving and refusing to give various instructions; and (3) that the district attorney was guilty of prejudicial misconduct. Our review of the

record convinces us that error in the instructions requires a reversal of the judgment but before proceeding to that phase of the case, we will deal briefly with the other contentions of defendant.

■ We find no merit in the contention that the evidence was insufficient to sustain the conviction. This contention appears to be based in part upon the claim that the testimony of Mr. Prouty concerning the circumstances surrounding the original business transaction was inherently improbable and in part upon the claim that there was no evidence showing an "imprisonment" of Mr. Prouty by the defendant. While the testimony of Mr. Prouty on the one hand and of defendant on the other, both in the civil action and in this action, was highly conflicting in so far as it related to the circumstances surrounding the original business transaction, we find nothing in the record which would justify this court in branding the testimony of Mr. Prouty as inherently improbable and therefore insufficient to sustain the conviction in this action. As to the "imprisonment" of Mr. Prouty, there is no material conflict in the evidence. Defendant concedes that he intended to make a citizen's arrest of Mr. Prouty upon a charge of perjury and that he had previously advised the police of such intention. He further concedes that he did announce, in the presence of Mr. Prouty and of the police officers, that he was making a citizen's arrest of Mr. Prouty. We deem it immaterial that defendant did not lay hands on Mr. Prouty or that he did not expressly direct the action of the officers in detaining Mr. Prouty and causing him to be booked at the police station. Such detention was the natural consequence of defendant's announced arrest of Mr. Prouty and was clearly at his implied request and direction.

"False imprisonment is the unlawful violation of the personal liberty of another". (Pen. Code, sec. 236.) If such imprisonment is effected by "violence, menace, fraud or deceit", it is punishable by imprisonment in the state prison, but if effected otherwise, it is punishable by fine or imprisonment in the county jail or both. (Pen. Code, sec. 237.) In defining false imprisonment, it is said in 22 American Jurisprudence, at page 359, ■ "In order to constitute a case of false imprisonment, it is essential that there be some restraint of the person; but it is not necessary that there be confinement in a jail or prison. Any exercise of force, or

express or implied threat of force, by which in fact the other person is deprived of his liberty or is compelled to remain where he does not wish to remain, or to go where he does not wish to go, is an imprisonment. The wrong may be committed by acts or by words, or both, and by merely operating upon the will of the individual or by personal violence, or both. . . . If an act is done with the intention of causing the confinement of the person actually confined or of another and such act is a substantial factor in bringing about a confinement, it is immaterial whether the act directly or indirectly causes the confinement.'' (See, also, *State* v. *District Court*, 70 Mont. 378 [225 Pac. 1000] ; *Martin* v. *Houck*, 141 N. C. 317 [54 S. E. 291, 7 L. R. A. (N. S.) 576] ; 5 Cor. Jur. 386 ; 25 Cor. Jur. 454.) We conclude that said authorities sustain the view that there was ample evidence of an ''imprisonment'' of Mr. Prouty by defendant within the meaning of said section 236 relating to false imprisonment.

 As to the claim of prejudicial misconduct on the part of the district attorney, we are of the opinion that there is no merit therein. The asking of certain questions on the trial is now assigned as misconduct but no such assignment was made during the trial. Assuming without deciding that there was justification for a claim of misconduct, it was incumbent upon the defendant to make an assignment of misconduct upon the trial and, in the absence of such assignment, it is ordinarily too late to raise the point for the first time on appeal. (*People* v. *King*, 13 Cal. (2d) 521 [90 Pac. (2d) 291] ; *People* v. *Mundt*, 31 Cal. App. (2d) 685 [88 Pac. (2d) 767] ; *People* v. *Payton*, 36 Cal. App. (2d) 41 [96 Pac. (2d) 991].) The same may be said of defendant's claim that at one time during the trial, the district attorney had a police photograph of defendant in his hand and held it in a position where the jurors might see it. There is nothing in the record of the trial to show that this incident occurred or that any assignment of misconduct was made with respect thereto. Several days after defendant's motion for a new trial had been denied and the judgment of conviction had been entered, defendant filed an affidavit in the trial court purporting to show for the first time that such an incident had occurred. This affidavit forms no proper part of the record on this appeal and may not be considered.

■■ We now turn to defendant's charge of prejudicial error on the part of the trial court in giving and refusing to give various instructions. Except as hereinafter noted, we are satisfied from a reading of the record that there was no prejudicial error in the action of the trial court. The serious question presented is that of the propriety of the trial court's action in dealing with the instructions on the general subject of the burden of proof and the presumption of innocence.

The trial court gave the following instruction on its own motion: ''It is admitted by the defendant that he arrested Willis O. Prouty on the charge that he Prouty had committed perjury, both in his affidavit which was part of the cross-complaint in the civil suit of *Agnew* v. *Prouty* and in the testimony which he, Prouty, gave at the trial of that action. If Prouty did commit such perjury, the defendant had a right to arrest him, but if Prouty did not commit such perjury, the arrest of Prouty by the defendant was unlawful. The burden is on the defendant to prove that Prouty committed perjury.''

The following instruction was given by the trial court as a modification of an instruction requested by the district attorney: ''You are instructed that, unless you find from the evidence that Willis O. Prouty had actually committed perjury, a felony, or that a felony had been committed by someone and the defendant had reasonable cause to believe that Willis O. Prouty had committed it, the arrest of Willis O. Prouty, if any was made by defendant, was not lawful.''

The giving of these two instructions and the refusal to give an instruction requested by defendant are assigned as prejudicial error. The refused instruction was to the effect that the defendant was entitled to the presumption of innocence and that it was the duty of the jury to give him the benefit of this presumption and to acquit him unless, after hearing all the evidence, the jury was convinced beyond a reasonable doubt of his guilt.

The trial court no doubt felt that the given instructions were proper under the decision in *People* v. *McGrew*, 77 Cal. 570 [20.Pac. 92]. In that case the following instruction was given: ''While it is true that the prosecution must prove the imprisonment, it is also true that the imprisonment being proven, the law presumes it unlawful until the contrary is

shown. It is for the defendant to justify it by proving that it was lawful.'' The court there held that said instruction had been properly given. Defendant contends that the McGrew case should be overruled and that in any event the giving of the above mentioned instructions and the refusal to give his requested instruction on the presumption of innocence, in amplification of the stock instruction based on section 1096 of the Penal Code, should be held to be prejudicial error under the circumstances. We shall therefore consider first the attack upon the soundness of the holding in the McGrew case approving said instruction.

*People* v. *McGrew, supra,* was decided in 1888 and has been cited with apparent approval since that time in two civil cases. (*Monk* v. *Ehret,* 192 Cal. 186, 189 [219 Pac. 452]; *Peters* v. *Bigelow,* 137 Cal. App. 135, 137 [30 Pac. (2d) 450].) It followed the rule laid down in certain criminal cases and set forth in certain texts cited therein. Our review of the authorities leads us to the conclusion that the instruction therein approved was substantially correct as far as it went but that, for the reasons hereinafter stated, said instruction should no longer be given in a criminal case without proper qualification.

We cannot agree with defendant that the instruction given in the McGrew case was wholly unsound. ▮▮▮▮ Defendant's argument that there cannot be two conflicting presumptions in a criminal case and that the presumption of innocence outweighs all other presumptions finds some support in the language of certain decisions such as *People* v. *Strassman,* 112 Cal. 683 [45 Pac. 3], but the effect of such language is clearly nullified by the decision in *People* v. *Le Doux,* 155 Cal. 535, the court saying at page 553 [102 Pac. 517], ''The instructions declare that the presumption of innocence is the only presumption allowable in a criminal case, that it is not overcome by any other presumption, but does overcome all other presumptions of whatsoever kind or nature. Such, however, is not the law. All presumptions are evidence. Conclusive presumptions (Code Civ. Proc., secs. 1961, 1962) are not overcome by the presumption of innocence, nor are many disputable presumptions so overcome.'' It thus appears that some disputable presumptions are allowable in criminal cases and the question arises as to whether a presumption of unlaw-

fulness is allowable in a criminal prosecution upon a charge of unlawful imprisonment.

Defendant concedes that there was such a presumption of unlawfulness at common law but calls attention to the fact that there is no statutory presumption on the subject in this state. We deem the last mentioned fact to be immaterial. There were many presumptions known to the common law. As was said in an early case in this jurisdiction "One of the favorite and much indulged doctrines of the common law, is the doctrine of presumption." (*Conger* v. *Weaver*, 6 Cal. 548, 556 [65 Am. Dec. 528].) At an early date, this state adopted the common law as "the rule of decision in all the courts of this state" in so far as it was not repugnant to the federal Constitution or the Constitution or laws of this state. (Stats. 1850, p. 219; see, also, Pol. Code, sec. 4468; 5 Cal. Jur. 255.) When this state adopted the codes, it was declared in section 1962 of the Code of Civil Procedure that certain presumptions "and no others" are deemed conclusive but no similar provision was embodied in section 1963 of the Code of Civil Procedure defining disputable presumptions. The last mentioned section merely lists numerous presumptions which are "of that kind". We find nothing in the codes which purports to abolish those disputable presumptions known to the common law which are not repugnant to the presumptions which are found in our statutes. We are therefore of the opinion that the common law presumption of unlawfulness in unlawful imprisonment cases still exists in this state regardless of the fact that such presumption is not specifically enumerated among those found in said section 1963.

This conclusion is in line with the general rule that "Where the subject matter of a negative averment in the indictment, or a fact relied upon by defendant as a justification or excuse, relates to him personally or otherwise lies peculiarly within his knowledge, the general rule is that the burden of proof as to such averment or fact is on him." (16 Cor. Jur. 530.) The foregoing statement of the rule was quoted with approval in *People* v. *Osaki,* 209 Cal. 169 at page 191 [286 Pac. 1025]. While that case is not directly in point, the general rule sanctioning the placing of the burden of proof upon the defendant in certain criminal cases, by statute or otherwise, is discussed at length. The rule is therein re-

ferred to as "the rule of convenience or necessity" (p. 185), and it is said that "The common law rule, which has come to be known as the 'rule of convenience', has been recognized and applied by our federal and state courts in large numbers in the absence of a statute to that effect." (p. 184.)

We believe that cases of false imprisonment are of the type in which such general rule should be applied even in the absence of an express statutory provision to that effect. Considerations of convenience and necessity would seem to compel this conclusion. "The offense of false imprisonment consists of two elements, the violation of another's personal liberty, and the unlawfulness of such violation." (12 Cal. Jur. 445.) Any allegations in the information charging falsity, unlawfulness or lack of warrant or authority are in the nature of negative allegations as they are the equivalent of an allegation that the imprisonment was not lawful. The difficulty and practical impossibility of proving such negative allegations is apparent from a reading of the code sections relating to arrests, and more particularly from a reading of section 837 of the Penal Code. That section providing that "A private person may arrest another: (1) For a public offense committed or attempted in his presence. (2) When the person arrested has committed a felony, although not in his presence. (3) When a felony has been in fact committed, and he has reasonable cause for believing the person arrested to have committed it." Any attempt to negative the situations covered by the first two subdivisions might well be met with the objection that the questions would call for the legal conclusion of the prosecuting witness and any attempt to negative the situation covered by the third subdivision would be futile. On the other hand, it should be a simple matter for the one assuming to make a citizen's arrest without process to show justification for such arrest if any such justification exists. The facts constituting such claimed justification would ordinarily lie peculiarly within his knowledge. It therefore seems clear that the McGrew case should not be overruled as the instruction therein approved appears substantially correct as far as it went and is sustained by reason and authority.

This conclusion, however, does not fully dispose of defendant's contentions with respect to said instructions nor does it mean that we are of the view that the instruction

given in the McGrew case should be given without proper qualification. The instruction given in the McGrew case implied that the burden was upon the defendant to prove the lawfulness of the imprisonment *by a preponderance of the evidence*. The least that may be said is that said instruction, standing alone, would necessarily tend to confuse the jury with respect to the degree or *quantum* of proof required of the defendant to meet the presumption of the unlawfulness of the imprisonment. In the present case, the trial court went further than did that court in the McGrew case and instructed the jury that "unless you find from the evidence that Willis O. Prouty had actually committed perjury" the arrest was not lawful. This instruction gave additional support to the implication found in other challenged instructions that it was incumbent upon the defendant to prove *by a preponderance of the evidence* that Prouty had committed perjury.

If the instructions had expressly stated that the burden was upon the defendant to prove *by a preponderance of the evidence* that Prouty had committed perjury, such instructions would have been clearly erroneous. This view finds support in the authorities dealing with the burden of proof in homicide cases. Section 1105 of the Penal Code provides, "Upon a trial for murder, the commission of the homicide by the defendant being proved, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable." In the early cases it was held that said section required that the defendant show justification by a preponderance of the evidence (*People* v. *Hong Ah Duck,* 61 Cal. 387; *People* v. *Raten,* 63 Cal. 421), but said cases were overruled in *People* v. *Bushton,* 80 Cal. 160 [22 Pac. 127, 549]. The last mentioned case has been consistently followed. (See *People* v. *Post,* 208 Cal. 433 [281 Pac. 618]; *People* v. *Roe,* 189 Cal. 548 [209 Pac. 560]; *People* v. *Morris,* 3 Cal. App. 1 [84 Pac. 463]; *People* v. *Lanagan,* 81 Cal. 142 [22 Pac. 482]; *People* v. *Elliott,* 80 Cal. 296 [22 Pac. 207].) In *People* v. *Bushton, supra,* the court said at page 164, "He is only bound under this rule to produce such evidence as will create in the minds of the jury a reasonable doubt of his guilt of the offense charged.

. . . The well settled rule that a defendant shall not be convicted unless the evidence proves his guilt beyond a reasonable doubt applies to the whole and every material part of the case, no matter whether it is as to the act of killing, or the reason for or manner of its commission. . . . The jury should have been instructed that the burden of proving circumstances of mitigation, or that justified or excused the killing, devolved upon the defendant, but that if, upon the whole case, they entertained a reasonable doubt from the evidence as to his guilt, he should be acquitted. Any other rule as to the weight of the evidence makes one measure applicable to one part of the case and a different one to another part, and leads to confusion.'' And as was said in *People* v. *Roe, supra,* at page 565, ''While the court gave the usual instructions as to the presumption of innocence and the fact that defendant's guilt must be established beyond a reasonable doubt, such instructions cannot be said to render the erroneous instruction referred to harmless.''

Our consideration of the instructions in the present case leads us to the conclusion that said instructions must be treated in the same manner as though they had expressly declared that the burden was upon the defendant to prove the lawfulness of the arrest of Mr. Prouty *by a preponderance of the evidence.* They required that defendant prove that Mr. Prouty ''had actually committed perjury''. Such instructions placed an undue burden upon the defendant and deprived him of the benefit of a reasonable doubt as to lawfulness of said arrest. We are therefore of the opinion that the second given instruction above quoted was erroneous and should not have been given. We are further of the opinion that while the first given instruction above quoted was substantially correct as far as it went, it should not have been given without a qualifying instruction informing the jury that the burden thus placed upon the defendant could be met by evidence which produced in their minds a reasonable doubt as to whether Mr. Prouty had in fact committed perjury. In passing we may further add that it would appear desirable that any instructions on this subject should embrace a further qualification such as that found in section 1105 of the Penal Code. No presumption of unlawfulness should arise and no burden should be cast upon a defendant

if the evidence introduced by the prosecution tends to show that the arrest was lawful.

The question of the necessity for some qualification of the instruction given in *People* v. *McGrew, supra,* defining the degree or *quantum* of proof required of the defendant to meet the burden placed upon him, was not raised in that case. It is significant to note in this connection that *People* v. *McGrew, supra,* was decided in the year preceding the decision in *People* v. *Bushton, supra,* and prior to the time that the earlier decisions in *People* v. *Hong Ah Duck, supra,* and *People* v. *Raten, supra,* had been overruled. Under the rule of last mentioned cases, a defendant was required to meet the burden by proving justification by a preponderance of the evidence. It appears probable that counsel in the McGrew case were familiar with said decisions and therefore urged only the point concerning the propriety of raising the presumption of unlawfulness and the propriety of placing the burden of proof upon the defendant in an unlawful imprisonment case.

■■■ Having concluded that the giving of the challenged instructions was error, there remains the question of whether such error was prejudicial to the defendant. A review of the record shows that there was a sharp conflict in the evidence. Mr. Prouty's version of the original transaction and defendant's version thereof were diametrically opposed. The question of whether Mr. Prouty had committed perjury in the civil action was therefore one which the jury in this action might have decided either way. Defendant's claim that Mr. Prouty had committed perjury and that the arrest was therefore lawful was his main, if not his sole defense. Under these circumstances, it became highly important to the defendant that proper instructions on the subjects of burden of proof and of reasonable doubt should have been given. But the instructions given on the subject of the burden of proof were erroneous and it is altogether probable that the trial might have resulted in an acquittal if proper instructions had been given. The error in giving said instructions must therefore be held to have been prejudicial. We have not discussed error in the refusal to give defendant's requested instruction above mentioned as we believe that the judgment must be reversed because of the error in the instructions given. It is apparent however that the refusal to give defendant's re-

quested instruction on reasonable doubt strengthens the view that the giving of the erroneous instructions was prejudicial to the defendant under the circumstances here presented.

The judgment and order denying the motion for a new trial are reversed and the cause is remanded for a new trial.

Carter, J., Edmonds, J., Traynor, J., Houser, J., Shenk, J., and Gibson, C. J., concurred.