[No. 31752. Department One. December 6, 1951.]

ARTHUR B. ABELSEN *et al., Respondents,* v. R. H. PROTHERO *et al., Appellants.*[1]

'Reported in 238 P. (2d) 397.

*Herbert O. Landon* and *Max R. Nicolai,* for appellants.
*Levinson & Friedman,* for respondents.

MALLERY, J.—The Pacific Exploration Company, Inc., desired to engage in a fishing venture for deep-sea crabs and halibut in Bering Sea and North Pacific waters. It entered into a ninety-day time charter for the catch and services of the oil screw "Foremost," whose home port was Seattle. The owners of the vessel were to furnish a crew of six fishermen and all supplies, except certain specified gear, which the company would provide. The venture was an experiment, it not being known what catch to expect.

Accordingly, the company guaranteed the sum of $27,500 for the ninety-day fishing operation in case the catch, at the agreed prices, fell below that amount. It was further agreed, if the vessel broke down so that it was unable to fish for more than forty-eight hours, that, thereafter, the guarantee would be reduced at the rate of $275 per day for the duration of the breakdown. Thus, the company assumed the risk as to the catch, and the owners of the vessel the risk of the loss of charter hire due to breakdown for over forty-eight hours.

In fulfillment of the charter, the owners of the vessel entered into contracts of employment with a crew of six fishermen. The contracts provided that the crew had read the charter, and that each would be guaranteed wages of twenty-five hundred dollars for the operation, except that in the event of a breakdown of the vessel they would receive no wages for any period for which the owners would not be

paid under the charter. Thus, the owners passed on to the crew their *wage* risk from a breakdown of over forty-eight hours. They then only had the risk of operating costs and the loss of their hire or profit for the use of the vessel for any unpaid period.

The owners desired to insure against their risk. They proposed that the crew join them in securing and paying for an insurance policy, which would insure the crew against their wage risk also. It was not known, at least to the crew, whether or not insurance coverage could be obtained for their risk. Accordingly, the members of the crew signed the following contract:

"Providing that insurance is obtainable, the undersigned members of the crew of the M/V Foremost, agree to pay their share of the premium (Amounting to about $75.00) for insurance to cover the loss of the charter money guaranteed under the charter of the M/V Foremost to the Pacific Exploration Co.

"This insurance to be issued under the American Hulls (Pacific) Deductible Average insurance form."

It was agreed that the owners would deduct the insurance premiums for the crew's coverage, if it was secured, from their last pay check.

The owners applied for and secured insurance in their name for both risks, that is, for the whole of the charter hire, which would be lost in case of a breakdown. They advanced the total premium on the policy of insurance. The rights of the owners and the crew were, thereupon, fixed. Thus, if the contingency insured against did not occur, the owners, nevertheless, by virtue of their contract relating to insurance with the crew, could invoke the liability for the crew's share of the insurance premium by withholding it from the last pay checks. In such an event, the interest of the owners in doing so is clear, since the premium itself is a loss if, at the end of the period of the policy, the contingency insured against has not occurred.

The vessel left Seattle in March and commenced fishing April 1, 1948. On May 27, 1948, the vessel had a breakdown, due to engine trouble. It returned the gear to the mother ship and started for Seattle for repairs. The insurance

company diverted it to Kodiak, Alaska, for the repairs which were completed on July 13, 1948, at which time the charter had expired.

The owners made a claim on the insurance company. They were paid for sums lost under the charter, by reason of the breakdown, in the amount of $9,075.

The owners did not tell the crew they had succeeded in obtaining the insurance coverage contemplated, did not deduct the crew's share of the premium from their pay checks, *after* the breakdown or at all, and made no accounting to the crew with regard to the recovery they had received from the insurance company.

Later, and in the fall, a member of the crew looked into the matter of the insurance. He learned the name of the insurance company, called upon it and found out about the issuance of the policy and the payment of the claim. He and three other members of the crew of six brought this action against the owners for their share of the recovery had under the policy. The trial court deducted their share of the premium, and rendered judgment for the plaintiffs for the balance of their shares of the recovery. The defendant owners appeal.

██ We affirm the judgment of the trial court, upon the basis of the existence of a resulting trust arising out of the contract between the parties relating to the insurance policy. *In re Peterson's Estate,* 12 Wn. (2d) 686, 123 P. (2d) 733; 2 Restatement of the Law of Trusts, 1244.

Appellants, themselves, state precisely the nature of the resulting trust in their brief as follows:

"Appellants contend that respondent's complaint states a cause of action in equity. Respondents sought to recover a portion of the insurance proceeds received by appellants as trustees of a resulting trust on an agreement that respondents would pay such share of the premium for charter hire insurance as would cover an amount of charter hire equivalent to respondents' possible loss of earnings in case of mechanical break-down of the boat."

Hereafter, the contract between the appellants and the Pacific Exploration Company, Inc., will be referred to as the

*charter*; the contract between the appellants and the insurance company as the *policy*; the original contract of employment between the parties as the *contract of employment*; and the subsequent contract between the parties relating to insurance as the *insurance agreement*.

Appellants contend that respondents breached the insurance agreement, because they never offered to pay their share of insurance premiums. The total premium advanced by the appellants was $847.91, of which the crew, by the terms of the insurance agreement, obligated themselves to pay $75 each or $525 in all. The trial court found, and the record supports the finding, that the parties agreed that respondents' premium contributions were to be held out of their last pay check by appellants.

Prior to that time, the breakdown had matured the policy, as the appellants well knew. The appellants neither disclosed the existence of the policy to the respondents, nor deducted their premium contributions from their last pay checks. They did make claim and were paid under the policy for the loss of charter hire, due to breakdown, in the amount of $9,075. Had they deducted the premium contributions, as it was their right and duty to do, respondents would have learned of the existence of the policy. Respondents had no duty as to premiums prior to learning of the existence of the policy, and did not breach the insurance agreement. Their premiums were paid by the trial court deducting them from their judgments. Appellants are not aggrieved.

Appellants contend that respondents breached their *contract of employment* by *abandoning* the vessel, after the breakdown, but prior to the expiration of the charter. The contract of employment provided that the crew was to suffer a deduction from their wage guarantee during the period in question or, in other words, they were not to be paid for their time while not fishing. The contract of employment is silent as to what, if any, free services were due from them after a breakdown. However, we need not draw even the natural inferences in that regard, because the trial court found, and the finding is supported by the record, that respondents left the vessel after the breakdown with the

knowledge and consent of the appellants, who significantly failed to inform respondents of the existence of the insurance policy. Thus, *even if* services were due, respondents were *excused.*

It should be remembered that the respondents are making no claim for wages earned under the *contract of employment*, which is irrelevant, except as background, in this case. They frankly concede they were paid in full for wages. In fact, three of them were considerably overpaid in November. Their claim is based on the insurance agreement, the purpose of which was to avoid time lost to them, due to breakdown, for which appellants had exempted themselves from the payment of wages under the employment contract.

Under all the circumstances surrounding their leaving the vessel, there is no inference that respondents intended to breach, rescind or abandon their rights under the insurance agreement.

Appellants emphasize their contention that

"Respondents have no vested interest in appellants' charter hire proceeds. The insurance proceeds received by appellants were paid to them in *lieu* of charter hire: Therefore respondents likewise have no vested interest in the insurance proceeds. Respondents' only claim against appellants *must rest on wages earned.* Respondents were entitled to wages only if they stayed with the boat and performed their contractual duties. Having voluntarily left the boat and having been paid in full for the time they fulfilled their employment agreement respondents are not entitled to recover anything in this action." (Italics ours.)

We have heretofore ruled against the facts therein contended for, and appellants have confessed its irrelevancy in their correct statement of the nature of the action, which we have heretofore quoted. We can only repeat that respondents' rights vested upon the happening of the contingency insured against under the *insurance agreement*, not the employment contract. The funds in the hands of the appellants, under a resulting trust, did not come from the Pacific Exploration Company, Inc., as charter hire, but from the policy in which respondents had more than a half interest. The policy insured respondents for time loss for which ap-

pellants were not liable under their employment contract.
■ The appellants contend:

"A seaman or officer lower than the master has been held to have no insurable interest in his wages or any property which he is to receive in lieu of wages, it being considered contrary to public policy to permit such insurances." 44 C. J. S. 919, Insurance, § 217.

From this they conclude that respondents, not having an insurable interest in the risk of time loss, are never entitled to anything but wages, and these have been paid in full. This is no comfort to appellants, even if time loss were uninsurable. The insurance company which paid the claim that included this item in question alone could urge such a ground, and it is not a party to this action. The fact is, appellants have the proceeds for this assertedly uninsurable risk. They give no hint as to why *they* are entitled to the payment for *respondents'* time loss.

The appellants contend that, even if respondents have an interest in the insurance proceeds, nevertheless, they are entitled to be reimbursed by way of setoff for all the expenses they incurred incident to the breakdown and repair of the vessel traceable to respondents having left it before the end of the charter period. It is true that had respondents stayed with the vessel and worked on the repairs, the appellants would have been spared certain expenses.

■ It is axiomatic that owners, as such, pay for repairs and these ordinarily include the cost of labor, parts, and incidentals. Appellants knew about the insurance policy. They could have informed respondents of its existence. Then, respondents would have known that, while the *employment contract* relieved *appellants* from the payment of wages during the breakdown period, they would not in the end depart empty-handed by reason of the policy. That appellants subsequently paid them breakdown period wages when, by the employment contract, they had no obligation to do so, is not a determinative fact. The point is that appellants elected to excuse the services to which they now claim to have been entitled, and incurred some labor expenses thereby which, if respondents had not discovered the

policy, would have been less than respondents' present claim. Appellants cannot *now* claim the value of services which they *then* excused. In any event, the claim of offset for repairs is not germane to the proceeds of the policy, which did not include cost of repairs within the risk insured against.

The judgment is affirmed.

SCHWELLENBACH, C. J., GRADY, DONWORTH, and WEAVER, JJ., concur.