[Crim. No. 7414. In Bank. March 25, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. EDWARD LOUIS ARGUELLO, Defendant and Appellant.

A. Brigham Rose and George A. Westover, under appointment by the Supreme Court, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, James Don Keller, District Attorney, and Donald L. Meloche, Deputy District Attorney, for Plaintiff and Respondent.

GIBSON, C. J.—The jury convicted defendant of first degree murder and fixed the penalty at death. A motion for a new trial was denied, and this appeal comes before us automatically under the provisions of subdivision (b) of section 1239 of the Penal Code.

The body of Marie Chapman, an 82-year-old widow, was found by a neighbor in the bathroom of her home in San Diego about 5 o'clock in the afternoon on November 9, 1961. According to the autopsy surgeon, death resulted from

several skull fractures and lacerations of the brain and throat. Mrs. Chapman ordinarily kept the doors to her house locked and was cautious in admitting persons into her home. A police inspection of the house revealed nothing to indicate a forced entry. About 9:30 a.m. on the day Mrs. Chapman was killed a neighbor heard her talking to someone in an excited voice. Mrs. Chapman's sister-in-law telephoned her at 11 a.m. and got no answer.

Defendant, who at the time of trial was 53 years old, had worked for Mrs. Chapman periodically for several years as a handyman. On the day Mrs. Chapman was killed he went to the home of his friend, Mrs. Josephine Mendoza, who lived in the same neighborhood as Mrs. Chapman. He told police that he arrived at Mrs. Mendoza's house about 9:30 or 10 o'clock in the morning, but Mrs. Mendoza testified that he did not reach there until about 11:30. Except for brief periods in the afternoon he was with Mrs. Mendoza the remainder of the day. He changed his clothes at Mrs. Mendoza's home and gave his trousers to her daughter to wash. The police found blood on the trousers, and defendant explained that he had cut his finger while wearing them a few days before. However, it was determined that the blood was not defendant's type and that it was the same type as decedent's.

A chemical analysis of a brick found in Mrs. Chapman's closet revealed "the probable presence of blood," and the autopsy surgeon testified that a brick could have caused the skull fractures. There was soil on the brick and on Mrs. Chapman's body, which tests disclosed was the same as that found in the yard behind the house of defendant's uncle, and the soils all contained distinctive characteristics not commonly found in soils. The police, while searching the yard, discovered what appeared to be an impression made by the narrow side of a brick, and the brick found in Mrs. Chapman's closet had soil only on one of its narrow sides. Defendant had slept in a shed at his uncle's home the night before Mrs. Chapman was killed.

A hammer was found attached to Mrs. Chapman's neck by a cord, and the autopsy surgeon testified that one of the injuries to her skull could have been inflicted with the hammer. Defendant had used the hammer, which belonged to Mrs. Chapman, while working for her. The cord was tied to the hammer by a type of knot which is not commonly used. When shortly after his arrest defendant was asked to tie a piece of cord, the knot he made was dissimilar to that used in

fastening the cord to the hammer. Later, while he was awaiting trial, he tied a bundle of clothing with string, and the knot he made this time was identical with the one used to tie the cord to the hammer.

Mrs. Chapman had $58.60 in her purse a few days before she was killed, but a search of her home after her death disclosed only two silver dollars in a trunk and less than 50 cents in her purse. Defendant had tried unsuccessfully to borrow $5.00 from Mrs. Chapman's sister-in-law on November 7, and he told Mrs. Mendoza the next day that he had only $2.00. He had about $35 when he arrived at Mrs. Mendoza's house on November 9, the day Mrs. Chapman was killed, $10 of which he gave to Mrs. Mendoza. Defendant denied having given Mrs. Mendoza any money, but when shown a 10-dollar bill Mrs. Mendoza had turned over to the police he admitted he had given it to her.

Defendant took the stand in his own behalf and testified that he was not at Mrs. Chapman's house at any time on the day she was killed and that he did not kill her.

 The court did not abuse its discretion in concluding that the probative value of certain photographs admitted in evidence outweighed their possible prejudicial effect. The photographs in question, which show decedent's body lying in a pool of blood on the bathroom floor, tended to assist the jury in understanding the testimony of the autopsy surgeon concerning the injuries Mrs. Chapman had suffered and the testimony of a criminalist regarding articles found in the vicinity of the body.

 The jury was correctly instructed on the law relating to circumstantial evidence, and it was therefore not error to refuse instructions submitted by defendant on that subject.

 Defendant claims it was the duty of the judge to comment to the jury on the credibility of witness Ernest Halcon, who testified that defendant had made certain admissions. In support of his claim defendant filed in this court an affidavit of his attorney, which states that during a recess in the trial the judge said that Halcon's testimony was "altogether unbelievable." So far as appears, the affidavit was not presented to the trial court, and it cannot be considered by this court since it is not a proper part of the record. (*People* v. *Agnew*, 16 Cal.2d 655, 660 [107 P.2d 601].) Defendant also points to a statement of his attorney, made during the argument on the motion for a new trial, that the

judge had said in another criminal case that he had no confidence in the veracity of Halcon. The record in the criminal case referred to by defendant's attorney is not before us, and we, of course, do not know the circumstances that prompted the remark assertedly made by the trial judge in that case. Even if it be assumed that the trial judge might have a duty under some circumstances to comment on the credibility of a witness, no such duty is shown by the record before us.

█ In support of a motion for a new trial, made on the ground of newly discovered evidence, defendant filed two affidavits. One was by defendant's uncle to the effect that a brick was not missing from his yard and that he had not seen the brick found in Mrs. Chapman's closet until it was shown to him after the trial. The other affidavit was by Mrs. Mendoza's daughter to the effect that when she saw defendant about noon on the day of Mrs. Chapman's death he seemed happy and acted in his customary, pleasant manner. Defendant has not shown that with reasonable diligence he could not have discovered and produced the evidence at the trial. To the contrary both affiants were known to defendant and were called by the prosecution as witnesses. Moreover, in our opinion the matters set forth in the affidavits were not such as to render a different result probable on retrial.

The evidence is sufficient to support the verdict that defendant is guilty of murder in the first degree, and we find no errors in the trial on the issue of guilt. █ Error, however, was committed in the penalty trial. Instructions were given by the court and statements were made by the prosecution of the type condemned in *People* v. *Morse*, 60 Cal.2d 631, 636 et seq. [36 Cal.Rptr. 201, 388 P.2d 33]. The prosecutor argued to the jury that a person who is sentenced to life imprisonment is eligible for parole after seven years, that whether such a person will be released at that time depends on the individual and the progress he has made in prison, and that it was for the jury to determine whether it would be willing to risk the possibility of having defendant in society again after seven years. The prosecutor also told the jury that the court would instruct that the judge or Governor might reduce the sentence or the Governor might pardon the defendant, but that the jury should not rely on the judge or Governor to disturb the verdict in any way. The court thereafter instructed the jury that in determining the penalty it could take into consideration that a defendant sentenced either to death or life imprisonment may be pardoned or have

his sentence reduced by the Governor, that a prisoner serving a life sentence may be eligible for parole, and that a trial judge may reduce the penalty from death to life imprisonment.

As was held in *People* v. *Hines, ante,* pp. 164, 169-170 [37 Cal.Rptr. 622, 390 P.2d 398] any substantial error in the penalty trial is prejudicial, and such error is committed in a case where there is a substantial deviation from the standards established in *Morse*. This is obviously such a case.

The judgment is reversed insofar as it relates to penalty; in all other respects it is affirmed.

Traynor, J., Peters, J., Tobriner, J., and Peek, J., concurred.

SCHAUER, J., Concurring and Dissenting.—The majority opinion discloses on its face that the reversal of the trial court's judgment imposing the death penalty pursuant to jury verdict is not based on an affirmative finding that the entire record, including the evidence, preponderates in establishing that there has been a miscarriage of justice; i.e., that it is reasonably probable that a result more favorable to the defendant would have been reached in the absence of the retroactively declared error. Accordingly, this case is not controlled by our decision in *People* v. *Morse* (1964) 60 Cal. 2d 631, 653 [36 Cal.Rptr. 201, 388 P.2d 33].

No doubt is suggested as to defendant's guilt: With a brick he crushed the skull of 82-year-old Marie Chapman for the purpose of robbery. The determination of guilt is affirmed and I concur in such affirmance. I must dissent from the reversal of the penalty judgment.

The facts stated in argument by the prosecutor as to the possibility of parole for a person sentenced to so-called life imprisonment, and as to the power of the trial judge or Governor relative to reduction of sentence or pardon, are not questioned as to substantial accuracy. Those facts are matters of common knowledge, at least to members of criminal case jury panels. It has generally been recognized that juries do not and should not operate in a mental vacuum; that they, of course, are familiar with such facts; but that no undue emphasis should be placed on such facts in argument. That is to say, we have recognized that jurors should be persons of common intelligence but that nothing should be said by way of argument or instruction which would tend materially to

minimize the responsibility of a juror or the seriousness of his task.

In *People* v. *Linden* (1959) 52 Cal.2d 1, 27 [31] [238 P.2d 397] we said ''A jury should approach the tasks of finding facts and exercising discretion as to choice of penalty with appreciation that their duties are serious and that they are accountable for their decisions, not with the feeling that they are making mere tentative determinations which the courts can correct. The jury have no concern with and should not be informed of the automatic appeal where judgment of death is imposed, and of course they should not be misinformed (as they inferentially were [in *Linden*]) concerning this court's powers." We denounced argument by a prosecutor which ''improperly diminishes the jury's recognition of their duties and responsibilities and powers'' but in the light of the entire record found that the Constitution's requirement for reversal had not been established. In the case now at bench, as the majority state, the prosecutor told the jury that they ''should not rely on the judge or Governor to disturb the verdict in any way.'' In the circumstances of this case no reasonable basis appears to me for concluding that the *jurors did* not perform their full duty with appreciation of the solemnity and responsibility of their proper function.

Upon the record now before us, and for all of the reasons stated in my concurring and dissenting opinion in *People* v. *Hines* (1964) *ante*, p. 175 [37 Cal.Rptr. 622, 390 P.2d 398], I find no constitutional empowerment to this court to do other than affirm the judgment in its entirety. Accordingly, I would so affirm.

McComb, J., concurred.

Respondent's petition for a rehearing was denied April 22, 1964. Schauer, J., and McComb, J., were of the opinion that the petition should be granted.