*446 TRAYNOR, C. J.
Defendants were convicted of conspiracy to commit kidnaping for the purpose of robbery (Pen. Code, §§ 182, 209) and of the first degree murder of William Fambro (Pen. Code, §189). The jury fixed the penalty at death on the murder count, and defendants were sentenced to prison for the term prescribed by law on the kidnaping count and to death on the murder count. On appeal, the judgments were reversed for a new penalty trial only. (People v. Polk, 61 Cal.2d 217, 234 [37 Cal.Rptr. 753, 390 P.2d 641].) Upon retrial, the jury again fixed the penalty for each defendant at death. This appeal is automatic. (Pen. Code, § 1239, subd. (b).)
The essential facts are set forth in our former opinion and need not be repeated. (People v. Polk, 61 Cal.2d 217 [37 Cal.Rptr. 753, 390 P.2d 641].)
At the second trial on the issue of penalty, there was also evidence that Polk admitted complicity in the killing of a gas station attendant, Raymond Sweet, on March 17, 1962, and, with Jesse Ferguson, in kicking to death in Los Angeles on April 10, 1962, a skid row inhabitant called “The Hook.”
Defendants were arrested in Los Angeles on May 20, 1962. The police began to question them on the day they were arrested and continued to do so for several months thereafter. They obtained numerous confessions concerning the murder of Fambro and other incidents of the alleged conspiracy. One officer estimated that he talked to defendant Gregg 20 times and to defendant Polk 10 times. At the trial on the issue of guilt, transcripts of some of these statements, tape recordings of some, and police testimony describing others were admitted into evidence against both defendants. At the second penalty trial, a tape recording of one of Gregg’s confessions, police testimony describing some of his other confessions, and police testimony describing Polk’s confession of other crimes were admitted into evidence. Their testimony at the trial on the issue of guilt was also read into evidence.
Confessions are inadmissible if they were obtained when “ (1) the investigation was no longer a general inquiry into an unsolved crime but had begun to focus on a particular suspect, (2) the suspect was in custody, (3) the authorities had carried out a process of interrogations that lent itself to eliciting incriminating statements, (4) the authorities had not effectively informed defendant of his right to counsel or of his absolute right to remain silent, and no evidence establishes that he waived these rights.” (People v. Dorado, 62 Cal.2d 338, 353 [42 Cal.Rptr. 169, 398 P.2d 361]; Escobedo v. Illi *447 nois, 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977].) The confessions were admitted into evidence at the trial on the issue of guilt and at the second penalty trial in violation of this rule.
All the confessions admitted into evidence were made after defendants had been arrested. All were obtained during several months of persistent police interrogation designed to elicit incriminating statements about many crimes. “ [W]hen the officers have arrested the suspect and the officers have undertaken a process of interrogations that lends itself to eliciting incriminating statements, the accusatory or critical stage has been reached and the suspect is entitled to counsel.” (People v. Stewart, 62 Cal.2d 571, 577 [43 Cal.Rptr. 201, 400 P.2d 97].) The first confession regarding the Fambro murder, the tape recording of defendant Gregg on June 2, begins: “George, in your own words . . . tell us as you told us before exactly what happened pertaining to this sailor boy.” Similarly, Sergeant Brooks testified that defendant Polk’s first statement about the killing of “The Hook” was obtained as follows: “I told him we were pretty sure that Jesse Ferguson had been involved and I was fairly certain that he was with Jesse when ‘The Hook’ was killed, and I asked if he was, and he said, ‘Yes.’ ”
There is no evidence that defendants were at any time advised of their right to counsel or of their absolute right to remain silent, and we cannot presume that they were so advised. (People v. Stewart, supra, 62 Cal.2d 571, 581.) Accordingly, all the confessions should have been excluded. (People v. Dorado, 62 Cal.2d 338, 353 [42 Cal.Rptr. 169, 398 P.2d 361].)
The Attorney General contends that the judgment on the issue of guilt was final before the decision in Escobedo v. Illinois, 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977], thereby precluding reversal on the grounds of that decision. (In re Lopez, 62 Cal.2d 368, 376 [42 Cal.Rptr. 188, 398 P.2d 380].) There is no merit in this contention. The judgment on the issue of guilt was affirmed on March 31, 1964. (People v. Polk, 61 Cal.2d 217 [37 Cal.Rptr. 753, 390 P.2d 641].) Within the 90 days thereafter in which defendants could have applied for certiorari (see 28 U.S.C. § 2101 (d); rule 22, Buies of the United States Supreme Court), on June 22, 1964, the United States Supreme Court decided the Escobedo case. Thus the judgment on the issue of guilt was not final at the time of Escobedo, since the United States Supreme Court has stated that “by final we mean where the judgment of con *448 vietion was rendered, the availability of appeal exhausted, and the time for petition for certiorari had elapsed . . . (Linkletter v. Walker, 381 U.S. 618, 622, fn. 5 [85 S.Ct. 1731, 14 L.Ed.2d 601].) In the Linkletter case, when faced with the retroactivity of Mapp v. Ohio, 367 U.S. 643 [81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933], the United States Supreme Court made clear that judgments not final at the time of the Mapp decision were reviewable by a writ of habeas corpus. Accordingly, federal habeas corpus will also be available to review judgments not final at the time of the Escobedo decision that are attacked on the basis of the rule in that case. (See Fay v. Noia, 372 U.S. 391, 438 [83 S.Ct. 822, 9 L.Ed.2d 837].) As we pointed out in In re Spencer, ante, pp. 400, 405, 406 [46 Cal.Rptr. 753, 406 P.2d 33], “Whether or not we are compelled to afford defendants a comparable state collateral remedy (see Case v. Nebraska (1965) 381 U.S. 336 [85 S.Ct. 1486, 14 L.Ed.2d 422] ; Henry v. Mississippi, supra, 379 U.S. 443 [85 S.Ct. 564, 13 L.Ed.2d 408]; In re Shipp (1965) 62 Cal.2d 547, 554, fn. 2 [43 Cal.Rptr. 3, 399 P.2d 571]; 76 Harv.L.Rev. (1963) 1253, 1269), the availability of the federal remedy makes it pointless for us to refuse to do so, when, as in this case, defendant is entitled to a new trial on the issue of penalty. Moreover, the grant of state collateral relief in these circumstances accords with our traditional habeas corpus rules. This court normally affords collateral relief on constitutional grounds if the petitioner had no opportunity to raise the constitutional issue at trial and on appeal. (See In re Dixon (1953) 41 Cal.2d 756, 760-761 [264 P.2d 513]; In re Shipp, supra, 62 Cal.2d 547, 551-553.) Petitioner had no such opportunity when, as in this case, the new constitutional right had not been declared at those times. (See People v. Hillery (1965) 62 Cal.2d 692, 711-712 [44 Cal.Rptr. 30, 401 P.2d 382]; People v. Kitchens (1956) 46 Cal.2d 260, 262-263 [294 P.2d 17].)” The attack on the judgments on the issue of guilt on this appeal from the judgments on the issue of penalty is comparable to a collateral attack, thereby requiring us to follow our practice on collateral attack by granting relief.
There is no merit in the Attorney General’s contention that even if the confessions were admitted in violation of Escobedo, their admission was not prejudicial since defendants took the stand and testified to committing the same acts described in their confessions. When defendants testified, the only substantial evidence connecting them with the Fambro murder, for which the jury fixed the penalty at death, was their inadmissible extrajudicial confessions and admissions. *449 The defendants had no evidence but their own testimony to present on their own behalf. Thus their failure to take the stand would have made verdicts of guilty certain after the prosecution’s introduction of the numerous confessions. Defendants therefore took the stand and again confessed, presumably hoping that the jury would find them guilty of a lesser offense than first degree murder. Thus, their testimony was impelled by the erroneous admission of the confessions and cannot be segregated therefrom to sustain the judgment. (Fahy v. Connecticut, 375 U.S. 85, 91-92 [84 S.Ct. 229, 11 L.Ed.2d 171]; People v. Davis, 62 Cal.2d 791, 796 [44 Cal.Rptr. 454, 402 P.2d 142]; People v. Dixon, 46 Cal.2d 456, 458 [296 P.2d 557]; People v. Ibarra, 60 Cal.2d 460, 463 [34 Cal.Rptr. 863, 386 P.2d 487]; see also People v. Mickelson, 59 Cal.2d 448, 449 [30 Cal.Rptr. 18, 380 P.2d 658].) Moreover, some of the extrajudicial confessions were more prejudicial to the defendants than their trial testimony. Thus, in the tape recording of defendant Gregg’s first statement, he confessed to a more active role in the Fambro killing than he admitted at the trial. The prejudicial effect of the admission of this tape recording is emphasized by the fact that at the second penalty trial the jury returned to the courtroom and requested that the instructions be given again, that Gregg’s tape-recorded statement be replayed, and that parts of his testimony be reread.
Since the violations of Escobedo affected the whole trial, the judgments on both the conspiracy and murder counts must be reversed.
Other questions remain that may arise on retrial.
At the trial on the issue of penalty, the testimony of the psychiatrist describing defendants’ admissions to her and defendants’ testimony at the trial on the issue of guilt that was read into evidence should also have been excluded. The psychiatrist interviewed each defendant twice at the request of the district attorney’s office. She was thus an agent of the prosecution with no more right than any such agent to elicit admissions from defendants without their being informed of their rights. (See People v. Quinn, 61 Cal.2d 551 [39 Cal.Rptr. 393, 393 P.2d 705].) The admissions of guilt of numerous crimes made to the psychiatrist should therefore have been excluded. (People v. Dorado, 62 Cal.2d 338, 353 [42 Cal.Rptr. 169, 398 P.2d 361].)
Defendants’ testimony at the trial on the issue of guilt was read into evidence in the second penalty trial. That testi *450 mony was impelled by the erroneous admission of the confessions. (People v. Davis, supra, 62 Cal.2d 791, 796.) Consequently, the testimony was inadmissible at any future trial and should have been excluded. Similarly, defendants’ testimony at the second penalty trial will be inadmissible hereafter. That testimony also was impelled, at least in part, by the admission of evidence obtained in violation of Escobedo.
Defendants contend that the introduction of a photograph depicting Fambro’s body lying in the grass at the bottom of an embankment and of the victim’s bloody undershorts was prejudicial. The introduction of this evidence would be prejudicial if the danger of prejudice to the defendant outweighed its probative value. (People v. Henderson, 60 Cal.2d 482, 495 [35 Cal.Rptr. 77, 386 P.2d 677].) The most inflammatory photographs were properly excluded, and the trial court did not abuse its discretion in holding that the remaining photographs and the undershorts were not unduly prejudicial. (People v. Arguello, 61 Cal.2d 210, 213 [37 Cal.Rptr. 601, 390 P.2d 377]; People v. Lindsey, 56 Cal.2d 324, 328 [14 Cal.Rptr. 678, 363 P.2d 910].)
At the second penalty trial, the district attorney argued to the jury that unless the death sentence was imposed, the defendants would get a “free ride” for the killing of Fambro and for other crimes. The trial court correctly ruled that such an argument is improper. “The district attorney . . . improperly discredited the Adult Authority by arguing that a life sentence for the murder would not increase defendant’s punishment since he already was subject to a life term as the result of [other crimes], when it is clear that the sentencing authority would consider a first degree murder as a factor toward increase of the length of the total prison term.” (People v. Treloar, 61 Cal.2d 544, 549 [39 Cal.Rptr. 386, 393 P.2d 698].)
Defendants contend that since evidence of other crimes was introduced at the trial on the issue of penalty, an instruction that such crimes must be proved beyond a reasonable doubt should have been given. We agree with this contention. Generally, the standard of competency of the evidence at the trial on the issue of penalty is the same as the standard required at the trial on the issue of guilt. (People v. Hamilton, 60 Cal.2d 105, 129 [32 Cal.Rptr. 4, 383 P.2d 412].) Since evidence of other crimes, however, may have a particularly damaging impact on the jury’s determination whether the defendant should be executed, we recognized in People v. Terry, 61 Cal.2d 137, 149, fn. 8 [37 Cal.Rptr. 605, *451 390 P.2d 381], that there should he an exception to the normal standard of proof at the trial on the issue of penalty (People v. Purvis, 56 Cal.2d 93, 95 [13 Cal.Rptr. 801, 362 P.2d 713]). Thus, even though at the trial on the issue of guilt the jury must only be convinced that it is more probable than not that the defendant committed other crimes before it may consider them (People v. Albertson, 23 Cal.2d 550, 579, 581 [145 P.2d 7]), at the trial on the issue of penalty they must be convinced beyond a reasonable doubt.
Finally, defendants contend that the trial court must instruct on the legal considerations that the jury should take into account when deciding whether the penalty should be death or life imprisonment. We do not agree that such an instruction is compulsory. The Legislature has entrusted to the absolute discretion of the jury the awesome decision between life imprisonment and the death penalty in first degree murder cases. (Pen. Code, § 190; People v. Green, 47 Cal.2d 209, 218 [302 P.2d 307].) The Legislature has thus indicated its belief that jurors understand the factors that are relevant to such a decision. Recitation of such factors by the trial court is therefore not essential. The trial court, may, however, properly aid the jury hy stating the kinds of factors that may be considered, thereby setting the tone for the jury’s deliberation. (See People v. Friend, 47 Cal.2d 749, 767-768 [306 P.2d 463]; Model Penal Code, § 210.6 (Proposed Official Draft 1962).) In this case, the trial court erroneously instructed that the jury cannot be influenced by “pity for the defendant” or “sympathy” for him. (CALJIC No. 1.) Although appropriate on the issue of guilt, this instruction improperly eliminates factors that a jury may consider- in fixing the punishment. (See People v. Friend, supra, 47 Cal.2d 749,767-768.)
Since other questions raised are not likely to arise on retrial, we need not decide them here.
The remittitur in People v. Ronald Howard Polk and George Anthony Gregg, Crim. No. 7356, 61 Cal.2d 217 [37 Cal.Rptr. 753, 390 P.2d 641], is recalled and the judgment of the Supreme Court of March 31, 1964, vacated as to defendants Polk and Gregg. The judgments appealed from are reversed in their entirety.
Peters, J., Tobriner, J., and Peek, J., concurred.