[Crim. No. 6110.   In Bank.   Nov. 22, 1957.]

THE PEOPLE, Respondent, v. REMMEL WAYNE BRICE, Appellant.

Andrew R. Edwards and Douglas J. Stapel for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

GIBSON, C. J.—The jury convicted defendant of murder of the first degree and fixed the penalty at death. This appeal comes before us automatically under the provisions of subdivision (b) of section 1239 of the Penal Code.

About 10:30 p.m. on July 21, 1956, G. Estanpol was shot to death in his liquor store on Sepulveda Boulevard in San Fernando Valley. Richard Provencio witnessed the shooting from his automobile at a nearby intersection. He saw a man facing Estanpol fire a gun and back out of the store. The man ran around the side of the building and disappeared into a

parking lot at the rear. Provencio got out of his automobile and went to the back of the building. A man sitting on the passenger's side of a 1950 or 1951 Oldsmobile sedan pointed a gun at him as the car drove away.

When the police arrived at the scene of the killing, they found three empty cartridges on the floor and three bullets embedded in the wall behind the spot where the victim lay. About a week later, a gun was discovered in the vicinity of the store. It was traced to defendant, and an expert on firearms identified it as the weapon used in the killing.

After defendant's arrest, he freely and voluntarily admitted the shooting when questioned by the police. According to his account, he had gone to Los Angeles from Bakersfield on July 21 in an automobile with Thomas Crow, and, on their way back to Bakersfield, they stopped at a liquor store on Sepulveda Boulevard. Crow, who was driving, remained in the car, and defendant went inside. There was no one in the front part of the store, and defendant walked to the rear with a gun in his hand. An old man was sitting there, listening to the radio, and defendant told him to get up and demanded "the money." As the man walked to the front of the store, he picked up a soda bottle and began "hollering" something in a language which defendant did not understand. Defendant thought the victim "was going to do something," and, before he "knew it" the gun went off in his hand. Defendant returned to the car, told Crow to drive slowly so as to escape notice, threw away his gun and his hat, and changed his shirt.

Crow testified that, on the night in question, he was driving a 1951 Oldsmobile, that defendant directed him to stop at the next liquor store, and that, upon returning to the car from the store at which they stopped, defendant told him to take a circuitous route to Bakersfield. After they were on their way, defendant told Crow that he had shot a man in the store.*

The evidence is clearly sufficient to support the verdict, and we find no error in rulings on the admission of evidence or in the instructions given to the jury. Defendant's sole conten-

---

*Crow was initially made a codefendant in this case. He was discharged pursuant to section 1099 of the Penal Code, which provides: "When two or more defendants are included in the same accusatory pleading, the court may, at any time before the defendants have gone into their defense, on the application of the prosecuting attorney, direct any defendant to be discharged, that he may be a witness for the people."

tion is that he was denied a fair trial on the issue of punishment because of the prosecutor's conduct. During the *voir dire* examination of prospective jurors and the argument at the close of the evidence, the prosecutor asked questions or made statements which might have been understood as meaning that, under the law applicable to first degree murder, the death penalty is preferred to life imprisonment and must be imposed, unless there are mitigating circumstances, and that death is the legally required punishment in the case of a "murder for profit." No objection was made to any of these questions or statements.

■ It is settled that, regardless of the circumstances connected with a murder of the first degree, there is no requirement of or preference for either of the applicable penalties but that, to the contrary, the selection of punishment is in every instance completely within the absolute discretion of the jury. (*People* v. *Green*, 47 Cal.2d 209, 217-232 [302 P.2d 307]; *People* v. *Friend*, 47 Cal.2d 749 [306 P.2d 463].) ■ In the absence of objections, however, defendant cannot now complain of the prosecutor's conduct where, as here, any danger that the jury might misunderstand its duty could easily have been removed at the trial. (*People* v. *Hampton*, 47 Cal.2d 239, 240-241 [302 P.2d 300]; *People* v. *Byrd*, 42 Cal.2d 200, 207-209 [266 P.2d 505].) We cannot assume that the court would not at once have taken corrective action, had the matter been called to its attention.†

■ Moreover, there is no reason to believe the jury was misled. In the instructions given by the court following the closing arguments, the jurors were told: "You are to be governed solely by the evidence introduced in this trial and the law as stated to you by me." We must assume, therefore, that the jurors followed the subsequent instruction relating to punishment in which they were informed that, under the law of the state, death or life imprisonment was the penalty for first degree murder "at the discretion of the jury," that, in performing their duty of selecting one of the penalties, they should be unanimous and should indicate their choice on the form to be provided them, and that they were free to act according to their own judgment and discretion.

---

†The only objection made during the prosecutor's argument to the jury was directed at a misleading comparison between the respective penalties for first degree murder and robbery, and the court immediately required the prosecutor to clarify the point in a manner favorable to defendant.

Under the circumstances, there is no basis for concluding that there was an error resulting in a miscarriage of justice. (See Cal. Const., art. VI, § 4½.)

The judgment and the order denying a new trial are affirmed.

Shenk, J., Carter, J., Traynor, J., Schauer, J., Spence, J., and McComb, J., concurred.

