[Crim. No. 6769. In Bank. June 15, 1961.]

THE PEOPLE, Respondent, v. THOMAS PURVIS, Appellant.

Martin N. Pulich, Public Defender, James C. Hooley and Thomas Francis Lyons, Assistant Public Defenders, for Appellant.

Stanley Mosk, Attorney General, Arlo E. Smith and John S. McInerny, Deputy Attorneys General, J. Frank Coakley, District Attorney, and Frank Vukota, Deputy District Attorney, for Respondent.

TRAYNOR, J.—This appeal is automatic from a judgment imposing the death penalty. (Pen. Code, § 1239, subd. (b).) Defendant had been found guilty of the first degree murder of Hazel Wilson, and sentenced to death. The judgment was affirmed on appeal insofar as it adjudged defendant guilty, but reversed insofar as it imposed the death penalty. (*People* v. *Purvis*, 52 Cal.2d 871, 884-887 [346 P.2d 22]). Upon retrial the jury again fixed the penalty at death.

Defendant contends that there was reversible error in the present proceeding because of the trial court's refusal to give certain requested instructions, its limiting the testimony of a defense witness, and its refusal to exclude certain hearsay testimony, and also because of misconduct of the prosecuting attorney.

Defendant requested the trial court to instruct the jury that in exercising its discretion as to the appropriate penalty it was to consider only facts proved beyond a reasonable doubt.[1] He requested an alternative instruction that only facts established by a preponderance of the evidence could be considered.[2] He also requested the court to instruct the

---

[1]The relevant part of the requested instruction (No. 9) is: "You may consider such facts in arriving at your decision as to what is the defendant's history and background which operate in aggravation or mitigation. However, those facts which tend to show aggravation may only be considered by you if you are convinced, beyond a reasonable doubt, that such facts have been proved. If you entertain a reasonable doubt that such facts have not been proved, then you should not consider all facts of the circumstances surrounding the crime or of the proper penalty."

[2]The relevant part of requested instruction number nine alternate substitutes the words "a preponderance of evidence" for "beyond a reasonable doubt."

jury that if it entertained a reasonable doubt as to which of the penalties to impose, the lesser penalty should be given.[3]

The court properly refused to give the requested instructions. The jury has absolute discretion in fixing the penalty and is not required to prefer one penalty over another. (*People* v. *Jones,* 52 Cal.2d 636, 648-649 [343 P.2d 577]; *People* v. *Brice,* 49 Cal.2d 434, 437 [317 P.2d 961].) In evaluating the evidence the jury was bound by the instructions given as to the limited purpose for which certain evidence was admitted, but beyond that it could draw its own inferences, determine the probative weight of evidence, and select the appropriate penalty on the basis of its evaluation of the evidence. (*People* v. *Brust,* 47 Cal.2d 776, 787-790 [306 P.2d 480]; *People* v. *Friend,* 47 Cal.2d 749, 767-768 [306 P.2d 463].)

Joseph Spangler, an administrative officer for the California Adult Authority, was called as a witness for the defendant as an expert on the parole policies of the Adult Authority. He testified to the median time spent in prison by first degree murderers who had been paroled. He was then asked whether he had any information as to the parole of a person who had been convicted of murder, paroled, and convicted of another murder. Mr. Spangler answered that he knew of one such person, but the trial court did not allow him to tell the jury about that person since he had been convicted of two first degree murders and not of a second degree murder followed by a first degree murder. Three times the jury returned to the courtroom to ask about parole procedure, and at one of those times asked to have the entire transcript of Mr. Spangler's testimony read to them. Defendant contends that it was proper for the jury to hear evidence as to how the Adult Authority would deal with a man twice convicted of murder (*People* v. *Purvis,* 52 Cal.2d 871, 885 [346 P.2d 22]), and that the interest of the jury in parole procedure indicated that the court's error in excluding that evidence was prejudicial.

---

[3]"The Court instructs you that if you entertain a reasonable doubt as to which of the two or more punishments should be imposed, it is your duty to impose the lesser.

"In determining which punishment shall be inflicted, you are entirely free to act according to your own judgment.

"If any individual juror, or the jury as a whole, entertains a reasonable doubt as to which of two or more punishments should be imposed, it is your duty to impose the lesser of the two." (Requested instruction No. 12.)

The distinction between the paroling of a person convicted of two first degree murders and a person convicted of a second degree murder and then first degree murder would seem to be too fine to justify exclusion of the offered testimony. Any error, however, in excluding the testimony was not prejudicial, for evidence of a single example would not be sufficient by itself to show a general practice of the Adult Authority or how it would treat another recidivist murderer.

Over defendant's objections hearsay statements were admitted of Eleanor Purvis, defendant's second wife, for whose death defendant had previously been found guilty of second degree murder. Officers testified that Eleanor Purvis had made statements to them that she was afraid defendant was going to kill her, that defendant had beaten her, had held her under water in a bathtub, and deliberately burned her thigh and vagina with a cigarette. None of this testimony had been introduced at defendant's trial in 1950 for the murder of Eleanor Purvis.

Although there may be "inquiry into relevant circumstances surrounding an earlier crime of which the defendant was convicted" (*People* v. *Purvis*, 52 Cal.2d 871, 881 [346 P.2d 22]), evidence of the earlier crime must meet the rules of admissibility governing proof of that crime or be otherwise properly admissible in the penalty proceeding. The attorney general contends that some of the hearsay statements of Eleanor Purvis can be admitted against defendant as his adoptive admissions. There was conflicting testimony whether defendant was present when the statements were made. Even if he were present, "Where his response is silence, evasion, or equivocation, it is for the trial court to determine in the first instance whether the accusation has been made under circumstances calling for a reply, whether the accused understood the statement, and whether his conduct or response was such as to give rise to an inference of acquiescence or guilty consciousness." (*People* v. *Simmons*, 28 Cal.2d 699, 712 [172 P.2d 18]; see *People* v. *Davis*, 43 Cal.2d 661, 670 [276 P.2d 801]; McBaine, California Evidence Manual 2d ed., § 934.) There is no evidence that would support such a determination. Furthermore there were no instructions given to the jury on evaluating adoptive admissions.

The Attorney General invokes *People* v. *Merkouris*, 52 Cal.2d 672, 682 [344 P.2d 1], and *People* v. *Atchley*, 53 Cal.2d 160, 172 [346 P.2d 764], for the proposition that the hearsay statements were admissible to show the state of mind of

Eleanor Purvis. In the Merkouris case, the victims' statements indicating fear of the defendant were admitted to identify the defendant as the killer. In the Atchley case, the statement was admissible on the issue of self-defense.

In the trial for the murder of Eleanor Purvis neither the identification of defendant as the killer nor a claim of self-defense was in issue. Nor had defendant put in issue any other fact to which the hearsay statements were relevant. Defendant's defense in that trial was that he acted without premeditation and was therefore guilty of second degree murder only. Thus, even on the issue of guilt the state of mind of the victim would not have been relevant. In the present case the hearsay statements of Eleanor Purvis were admitted, not merely to establish defendant's guilt of her murder but to influence the jury in a separate proceeding to determine the penalty for a subsequent murder. In determining the penalty for the murder of Hazel Wilson the state of mind of Eleanor Purvis has no probative value. Certainly any probative value it could conceivably have would be far outweighed by the highly prejudicial nature of the hearsay statements. Eleanor Purvis did not merely say she feared defendant. She related beatings and acts that could readily lead the jury to believe that defendant was so depraved he deserved the death penalty.

 Defendant contends that certain hearsay statements of Hazel Wilson were also improperly admitted. Witnesses testified that Hazel Wilson had told them that she was afraid of defendant because he had killed his wife. In the trial for the murder of Hazel Wilson defendant also claimed that he had killed without premeditation. There was no issue of either identification or self-defense. There was thus no ground on which Hazel Wilson's fear of defendant could be admitted even to prove defendant's guilt let alone to aid the jury in fixing the penalty. It may be that an inference as to the victim's conduct can be drawn from the victim's state of mind, but certainly no permissible inference can be drawn therefrom as to defendant's character or actions. Standing alone, the error in admitting this evidence might not be prejudicial. Considered, however, with the error in admitting the highly prejudicial hearsay statements of Eleanor Purvis and the improper use of the hearsay in the prosecutor's argument to the jury the conclusion is inescapable that the purpose of introducing such testimony was to inflame the jury against defendant.

The prosecutor argued to the jury as if the hearsay statements of Eleanor Purvis established the truth of the matter asserted, although those statements had been admitted only to show her state of mind toward defendant. In both his opening and closing arguments the prosecutor stated that defendant would take lighted cigarettes and burn Eleanor Purvis' thighs and her vaginal tract. These highly inflammatory statements of defendant's conduct could only have been made to persuade the jury that defendant was such a depraved person he deserved the death penalty. The prosecutor's argument thus served to compound the original error in admitting these hearsay statements. Even if they could be admitted to show Eleanor Purvis' state of mind, the prosecutor's assumption in his argument that they were true would far exceed the bounds of proper argument. Particularly when guilt has been established and the question is one of life imprisonment or death must strict standards of fairness be observed. The serious errors both in the admission of evidence and the highly prejudicial misconduct of the prosecutor in his argument to the jury, deprived defendant of a fair trial on the issue of penalty and therefore compel a reversal. The judgment imposing the death penalty is reversed, and the cause is remanded for retrial and redetermination of the question of penalty only and for the pronouncement of a new sentence and judgment in accordance with such determination and the applicable law.

Gibson, C. J., Peters, J., White, J., and Dooling, J., concurred.

SCHAUER, J., Concurring and Dissenting.—For reasons hereinafter explained I concur in the judgment but in the interest of more helpful and accurate guidance of the trial court on the new trial (this is a second reversal) I would modify the majority opinion in certain respects. I would amend and augment the opinion to more adequately define (for instruction of the jury at the penalty stage of a trial) the difference between the burdens of (a) proof and (b) persuasion in, respectively, (1) the process of evaluating conflicting evidence to determine whether the existence of particular facts has been proved and (2) the process of exercising absolute discretion to determine the ultimate issue of selecting the penalty. Furthermore, I think a reading of the transcript demonstrates the untenability of, and I would delete, the holding that ''There is no evidence that would support . . . a

determination'' that *any* of the hearsay statements of Eleanor Purvis were admissible.

In more detail, my views in this matter and the reasons therefor, are as follows:

Defendant's first requested instruction as to burden of proof at the penalty stage of the trial[1] was properly refused because it would have required that facts in aggravation of punishment be proved beyond a reasonable doubt and would have left the jury uninstructed as to whether there was any burden of proof of facts in mitigation. Similarly, defendant's alternative requested instruction on the subject[2] would have created the erroneous impression that, while the jury could consider aggravating facts only if they were proved by a preponderance of the evidence, there was no burden of proof as to mitigating facts.

As the majority say (*ante,* p. 96 [13 Cal.Rptr. 803, 362 P.2d 715]), ''The jury has absolute discretion in fixing the penalty and is not required to prefer one penalty over another.'' And at the penalty stage of trial there is no burden of producing evidence. The instructions given here apprised the jury of these concepts,[3] but did not tell them about any burden of persuasion, or risk of nonpersuasion, of *facts.* In my opinion there is a burden of proof of facts, if either party seeks to prove them, at the penalty stage of trial as in any other adversary proceeding; and there is a difference

---

[1]The relevant part of the instruction (quoted by the majority also in their f.n. 1) is: ."those facts which tend to show aggravation may only be considered by you if you are convinced, beyond a reasonable doubt, that such facts have been proved. If you entertain a reasonable doubt that such facts have *not* been proved, then you should not consider such facts in arriving at your decision as to what is the proper penalty." (Italics added.) The italicized "not" appears to have been inserted by clerical error.

[2]The pertinent part of such instruction is: "those facts which tend to show aggravation may only be considered by you if you are convinced that such facts have been proved by a preponderance of evidence. If you are not convinced that such facts are proved by a preponderance of evidence then you should not consider them in arriving at your decision as to what is the proper penalty."

[3]The jury were told:

"In determining which punishment shall be inflicted, you are entirely free to act according to your own judgment and absolute discretion. The discretion of determining which punishment shall be imposed is vested in the jury alone. In this determination it is your duty to conscientiously consider all of the evidence of the circumstances surrounding the crime, of the defendant's background and history and of any facts in aggravation or mitigation of the penalty which have been presented to you here in court, weighing and considering the evidence under the applicable rule of law which was given to you in the Court's instructions in this case. [As stated, there was no instruc-

between the process of the jury's evaluating conflicting evidence to determine whether the existence of particular facts have been proved, and the process of their exercising absolute discretion to determine the ultimate issue of selecting the penalty.

The trier of the issue of penalty does not have to find the existence of mitigating circumstances in order to select the punishment of life imprisonment, or the existence of aggravating circumstances in order to fix the punishment at death. The ultimate determination need not rest on the resolution of any question of fact in the traditional sense in which such questions are usually presented in a lawsuit. The selection of penalty may be based on matters such as the following, which are not proved as facts but rest in the judgment and consciences, the minds and hearts, of the jury: ''considerations of the several objectives of punishment, of the deterrence of crime, of the protection of society, of the desirability of stern retribution, or of sympathy or clemency . . . or of the irrevocableness of an executed sentence of death, or an apprehension that explanatory facts may exist which have not been brought to light . . . .'' (*People* v. *Friend* (1957), 47 Cal.2d 749, 768 [306 P.2d 463]; *People* v. *Jones* (1959), 52 Cal.2d 636, 649 [7] [343 P.2d 577].)

Although a jury could properly, for example, disbelieve all the evidence introduced by the People in aggravation, believe all the evidence introduced by the defendant in mitigation, and yet impose the death penalty because of ''extra-evidentiary'' factors such as those just recited, I think its original evaluation of the evidence (before it reached its final task of selecting punishment) would have to be guided by the concept of burden of proof. I know of no other manner in which the evidence could be weighed, and I doubt that anyone would contend that at the penalty stage of trial the evidence could be arbitrarily ignored.

It has been held that where the selection of penalty is made by the jury, the proceeding should be a trial in the full

tion concerning weighing the evidence as to the existence of particular *facts* in the light of any burden of proof.] . . .

"The choice as between the two penalties is in every case committed to the jury's absolute discretion. . . .

''With respect to the *penalty,* no burden of proof is cast upon the People or the Defendant to show by any particular quantum, that is amount, of evidence which penalty should be imposed by you. You are further instructed that you must agree unanimously on the penalty which is to be imposed in this particular case, which unanimous decision should be indicated by your verdict.'' (Italics added.)

technical sense, governed by the same rules of procedure as the trial of the issue of guilt. (*People* v. *Purvis* (1959), 52 Cal.2d 871, 883-884 [12] [346 P.2d 22]; *People* v. *Green* (1956), 47 Cal.2d 209, 236 [16] [302 P.2d 307].) That holding concerned the requirement that only competent evidence be received, but to me it also contemplates the concept of burden of proof—although not the same burden which is imposed on the People at the trial of the issue of guilt, when there is a presumption of defendant's innocence—and instructions explaining the applicable burden.

In the present case, the People presented evidence of instances of reprehensible conduct of defendant antedating and apart from the subject murder, and the defendant presented evidence that those instances did not occur. Before the jury could intelligently decide—in their absolute discretion, to be sure—what penalty defendant should suffer, they would have to determine whether the aggravating events took place. That determination, I think, should have been made under guidance of instructions that the People had the burden of proving aggravating facts by a preponderance of the evidence. And where defendant presents evidence of mitigating circumstances I think the jury should be told that he has the burden of proving such circumstances by a similar preponderance.

I am further of the opinion that the jury should have been instructed that if they entertained a reasonable doubt as to which penalty should be imposed, they should select the lesser. Such an instruction (which would accord with a dictum in *People* v. *Cancino* (1937), 10 Cal.2d 223, 230 [3] [73 P.2d 1180]), would not concern the burden of proof of issues of fact. Rather, it would be a proper application of the more general rule that "The defendant is entitled to the benefit of every reasonable doubt, whether it arise out of a question of fact, or as to the true interpretation of words or the construction of language used in a statute." (*In re Tartar* (1959), 52 Cal.2d 250, 257 [10] [339 P.2d 553].) The instruction requested by defendant in this regard,[4] however,

---

[4]The requested instruction (quoted by the majority in their f. n. 3) is:

"The Court instructs you that if you entertain a reasonable doubt as to which of the two or more punishments should be imposed, it is your duty to impose the lesser.

"In determining which punishment shall be inflicted, you are entirely free to act according to your own judgment.

"If *any individual juror*, or the jury as a whole, entertains a reasonable doubt as to which of two or more punishments should be imposed, it is your duty to impose the lesser of the two." (Italics added.)

could not properly have been given in its entirety, for its last paragraph would have incorrectly told the jury that if a single juror had a reasonable doubt as to which punishment should be inflicted, it would be the duty of the entire jury to yield to his opinion and impose the lesser penalty. Rather, in such a situation, it would be the duty of the jury to report to the trial judge their inability (if such was the fact) to reach a unanimous verdict on the issue of penalty. The judge should then ''dismiss the jury and either impose the punishment for life in lieu of ordering a new trial on the issue of penalty, or order a new jury impaneled to try the issue of penalty.'' (Pen. Code, § 190.1.)

I am also not entirely in accord with the majority's discussion of the testimony of police officers who related the contents of accusatory statements made by defendant's wife Eleanor on various occasions during the six months prior to her murder by defendant on February 6, 1950. The evidence would support a determination that on one or two occasions when Eleanor stated that defendant had struck her or bruised her, defendant was present and did not deny the accusations. I cannot agree with the majority (*ante*, p. 97) that there is *no* evidence which would support a determination that those accusations were understood by defendant and made in circumstances calling for a reply, and that defendant's failure to deny them could give rise to an inference that he admitted their truth. Eleanor's statements were made to police officers who had been summoned by a report of a ''family disturbance''; certainly such a situation would normally call for some reply by the asserted creator of the disturbance. There is nothing in the record to suggest that defendant lacked ordinary capacity to understand the accusations (his own testimony belies such a suggestion) or that his silence was the result of coercion. In the circumstances I find no prejudice in the lack of literal compliance with the foundational requirement that the trial judge determine ''in the first instance'' whether the accusations were made in a situation which would support an inference of admissions by silence (*People* v. *Simmons* (1946), 28 Cal.2d 699, 712 [6a] [172 P.2d 18]) or in the failure to instruct the jury concerning such admissions.

I agree that the more damaging statements that defendant held Eleanor's head under water and deliberately burned her with a cigarette were inadmissible hearsay. There is no evidence that defendant was present when Eleanor made

these accusations and their scope went far beyond that necessary to show a relevant state of mind of the victim. *People* v. *Merkouris* (1959), 52 Cal.2d 672, 682 [10-12] [344 P.2d 1], should not be extended (and *People* v. *Feasby* (1960), 178 Cal.App.2d 723, 733-734 [14-17] [3 Cal.Rptr. 230] should not be construed) to permit the introduction in evidence, without discrimination, of all sorts of accusations against a defendant by the victim of a homicide, upon the theory that the victim's state of mind is relevant.

However, I cannot agree with the broad statement of the majority (*ante*, p. 98) that in the trial of defendant for the murder of Eleanor "on the issue of guilt the state of mind of the victim would not have been relevant." In that trial the prosecution might not have foreseen that the sole. defense would be an attempt to show that defendant killed without premeditation. Defendant's plea of not guilty put in issue the identity of the killer as well as every element of the crime of murder. (Pen. Code, § 1019.) I am not prepared to say, on the basis of hindsight, that because defendant did not, at the trial for Eleanor's murder, testify that he was not the killer, therefore the prosecution could not have proved Eleanor's fear of defendant, by her declarations appropriately limited (see *People* v. *Burton* (1961), 55 Cal.2d 328, 348-349 [20-22] [11 Cal.Rptr. 65, 359 P.2d 433]), in order to show the probability that she was killed by defendant rather than some unidentified third person.

Also I am not prepared to say that evidence that a previous wife, particularly one killed by defendant, feared him for some time before her death, has no probative value in the determination of penalty for the subsequent killing of a paramour. But in the instant case the manner in which the district attorney used the statements of Eleanor suggests that he deliberately presented inadmissible hearsay concerning prior depraved conduct of defendant, with full awareness of the impropriety of such evidence. The prosecuting attorney should have known when he made his opening statement what the tenor of the testimony of the experienced police officers would be. Certainly at the end of the taking of evidence, after repeated colloquies among the trial judge and counsel concerning the matter, the prosecutor knew that he had not presented any admissible evidence that defendant attempted to drown Eleanor and burned her with a cigarette on occasions prior to her murder. Yet both the prosecution's opening

statement and its closing arguments assumed the truth of the subject hearsay.

On almost every occasion when the officers' testimonies as to Eleanor's declaration were given the trial judge was commendably careful to instruct the jury that the evidence was received only to show her state of mind and not to show the truth of other facts declared by her. But in the circumstances I do not believe that the admonitions of the judge could cure the prejudicial effect of the incompetent evidence. I do not imply that I think the penalty selected by the jury is not fully warranted by the properly admitted and competent evidence. In an ultimate sense, if we could consider only the admissible evidence and the verdict, we should properly conclude that no miscarriage of justice appears. But such a limited consideration of the record does not meet California's standard of justice. The elements of procedural due process are as essential to a valid judgment as is proof of the facts constituting the crime. If any evidence on the issue of penalty is to be received it must be competent evidence, not prejudicial hearsay. I agree with the majority that the compounding of error in receiving incompetent evidence and the misconduct of the prosecuting attorney require reversal and remand for a new trial on the sole issue of penalty.

McComb, J., concurred.