Thomas E. PURVIS, Petitioner,

v.

The STATE OF CALIFORNIA, and the Superior Court of the State of California, for the County of Alameda, Respondent.

No. 42639.

United States District Court
N. D. California, S. D.

Sept. 11, 1964.

John D. Nunes, Public Defender, Oakland, Cal., for petitioner.

Stanley Mosk, Atty. Gen., State of California and Albert W. Harris, Jr., Deputy Atty. Gen., and John F. Kraetzer, Deputy Atty. Gen., San Francisco, Cal., for respondent.

WOLLENBERG, District Judge.

On December 19, 1957, petitioner was arrested for the murder of his paramour, Hazel Wilson. On January 30, 1958, an information was filed against him in the Superior Court of Alameda County, State of California. He was brought to trial on September 29, 1958 and on October 9, 1958 a jury found him guilty of first degree murder. Pursuant to the California bifurcated trial procedure (Cal. Pen.Code § 190.1), on October 23, 1958 the same jury imposed the death penalty. The first degree murder conviction was affirmed by the California Supreme Court, People v. Purvis, 52 Cal.2d 871, 346 P.2d 22 (1959), but the death penalty was reversed because of error in the penalty phase of the trial.

On July 5, 1960 a new proceeding, limited solely to the penalty issue, was commenced. After six weeks of trial a newly selected jury returned another death verdict. This judgment was also reversed by the California Supreme Court because of prejudicial error. People v. Purvis, 56 Cal.2d 93, 13 Cal.Rptr. 801, 362 P.2d 713 (1961).

On March 12, 1962, a third hearing was begun on the penalty issue. After two months of trial still another jury imposed the death penalty. This judgment too was reversed by the California Supreme Court because of prejudicial error in the proceeding. People v. Purvis, 60 Cal.2d 323, 33 Cal.Rptr. 104, 384 P.2d 424 (1963).

Since the third reversal counsel for petioner have made several attempts to prevent the holding of a fourth penalty trial. In January, 1964, a motion to set the sentence at life imprisonment was denied by the Superior Court of Alameda County. In February, 1964, a petition for Writs of Mandamus and Prohibition seeking similar relief was denied by the California Supreme Court. In March a petition for rehearing or for stay of proceedings to permit the filing of an application for certiorari in the United States Supreme Court was also denied by the California Supreme Court. On March 11, 1964 this Court stayed the state court proceedings pending the filing of an application for Writ of Certiorari in the United States Supreme Court. In April, 1964, the U. S. Supreme Court stayed the state court proceedings pending a determination of petitioner's application. On June 22, 1964, the application was denied, without comment. A fourth penalty trial has now been set for September 14, 1964, and petitioner has asked this Court to prevent the holding of such a trial.

Petitioner argues he is entitled to relief from a federal court because specifically he has been deprived of the right to a speedy trial and has been subjected to cruel and unusual punishment, and generally because a further penalty trial would violate due process of law. His arguments are grounded not merely on the length of time it has taken to fix a penalty, nor on the fact that errors have been committed by the prosecution. The gravamen of his position is that the State of California has forfeited its right to hold another penalty trial because of the wilfull misconduct of a particular deputy district attorney.

For a proper determination of this case, it is necessary that first, this Court determine what the deputy district attorney's conduct actually was, and then second, in the light of his conduct, decide what the legal implications are.

The three decisions of the California Supreme Court in this case have been incorporated into the record and the facts found therein and the opinions expressed by the California judges will be the basis for our determination.

The same deputy district attorney was the prosecutor in all three trials. The first was reversed *inter alia* because of the introduction of irrelevant and misleading parole records into evidence. Justice Traynor, writing for the majority, commented that, "the error in admitting the challenged records was aggravated by the prosecuting attorney's use of them in his argument to the jury to disparage the operation of the Adult

Authority * * * and his argument, unsupported by any evidence in the record, that the Adult Authority did not give proper consideration to recommendations of prosecuting attorneys with respect to punishment." 52 Cal.2d 871, 886, 346 P.2d 22, 31.

Justice Traynor also wrote the opinion on the second trial. There, the error was committed by the introduction of hearsay statements made by petitioner's wife, Eleanor Purvis, but it was the conduct of the prosecutor which compelled a reversal.

"The prosecutor argued to the jury as if the hearsay statements of Eleanor Purvis established the truth of the matter asserted, although those statements had been admitted only to show her state of mind toward defendant. In both his opening and closing arguments the prosecutor stated that defendant would take lighted cigarettes and burn Eleanor Purvis' thighs and her vaginal tract. These highly inflammatory statements of defendant's conduct could only have been made to persuade the jury that defendant was such a depraved person he deserved the death penalty. The prosecutor's argument thus served to compound the original error in admitting these hearsay statements. Even if they could be admitted to show Eleanor Purvis' state of mind, the prosecutor's assumption in his argument that they were true would far exceed the bounds of proper argument. Particularly when guilt has been established and the question is one of life imprisonment or death must strict standards of fairness be observed. The serious errors both in the admission of evidence and the highly prejudicial misconduct of the prosecutor in his argument to the jury, deprived defendant of a fair trial on the issue of penalty and therefore compel a reversal." 56 Cal.2d 93, 99, 13 Cal. Rptr. 801, 804–805.

Justice Shauer, with Justice McComb concurring, dissented from the conclusion of the majority that reversal was required. He, too, however, found himself compelled to remark disapprovingly on the conduct of the prosecuting attorney.

"[I]n the instant case the manner in which the district attorney used the statements * * * suggests that he deliberately presented inadmissible hearsay concerning prior depraved conduct of defendant, with full awareness of the impropriety of such evidence. The prosecuting attorney should have known when he made his opening statement what the tenor of the testimony of the experienced police officers would be. Certainly at the end of the taking of evidence, after repeated colloquies among the trial judge and counsel concerning the matter, the prosecutor knew that he had not presented any admissible evidence * * *. *Yet both* the prosecution's opening statement and its closing arguments assumed the truth of the subject hearsay." 56 Cal.2d 93, 104–105, 13 Cal.Rptr. 801, 808.

In the third trial the prosecuting attorney once again introduced hearsay statements which, according to the law of the case established in the second appeal, were inadmissible. The third opinion, written by Justice Peters, specifically castigated the conduct of the prosecuting attorney.

"Under the guise of proving adoptive admissions the prosecution offered and secured the admission of three facts that could only be relevant as to proof of the former victim's state of mind—evidence identical to that held to be inadmissible, and its admission held to be prejudicial, on the last appeal. Thus the police were allowed to testify that Eleanor did or did not desire to have Purvis arrested, varying with the different episodes, that she looked frightened or fearful, and that she

went to the police station, not in his presence, to express her fears that he would kill her. None of these items, under any interpretation, could constitute an adoptive admission, and none was admissible on any other theory. To aggravate the error, the prosecuting attorney used each of these three items in his closing argument as proof of the fact of Purvis' brutality." 60 Cal.2d 323, 332, 33 Cal.Rptr. 104, 109, 384 P.2d 424, 429.

Justice Peters pointed out that the deputy district attorney "was guilty of the very same misconduct for which he had been reversed" previously not only in this case but also in another case involving a similar issue. See People v. Hamilton, 55 Cal.2d 881, 13 Cal.Rptr. 649, 362 P.2d 473. Consequently, Justice Peters indicated that "[s]uch misconduct must be deemed to have been deliberate" 60 Cal.2d at 332, 33 Cal.Rptr. 104, 110, 384 P.2d 424, 430. He concluded his opinion with the following analysis:

"This is the third reversal in this case. A retrial of the penalty issue is necessary. This is particularly unfortunate in this case because it has already been finally determined that Purvis is guilty of murder in the first degree, and the circumstances of that murder are such that a jury would be justified in imposing the death penalty. But as guilty as Purvis may be, he is entitled to have the question of whether he should be given life imprisonment or the death penalty determined by the jury without the introduction of erroneous evidence and without misconduct aimed at influencing the jury by the prosecution. Here erroneous evidence was admitted, and the prosecutor was guilty of acts of misconduct, that at least once, and sometimes twice in this very case, have been held to be prejudicially erroneous. Under such circumstances the misconduct must

have been deliberate and intentional. Certainly, such misconduct directly related to the only issue before the jury. Certainly, it was calculated to and we must presume did adversely affect the jury in its deliberations. Certainly, it is reasonably possible that such errors may and could have tipped the scales against defendant. Such errors, therefore, must be held to have been prejudicial." 60 Cal.2d 323, 353, 33 Cal.Rptr. 104, 123, 384 P.2d 424, 443.

The following situation now exists:

1) Petitioner has been convicted of first degree murder. He cannot receive a sentence of less than life. Cal.Pen.Code § 190.

2) California has provided a procedure whereby the death penalty can be imposed by a jury after a trial. The trial procedures provided by state law do not differ from other state criminal trial procedures.

3) The same prosecutor has deliberately in three separate penalty trials used methods which have been deemed to be prejudicial in order to convince the jury that the death penalty should be imposed.

4) The only state sanction against such conduct seems to be to require that a new trial be held.

5) Presumably, the prosecutor could continue to conduct himself in the same way in subsequent trials.

6) Unless a remedy is provided petitioner thus faces the possibility of an indefinite series of trials.

The time is not yet appropriate for this Court to pass on all the legal implications of the prosecutor's conduct. If the State of California has forfeited its right to impose the death penalty the time to decide that question is when the death penalty is finally imposed. At present, petitioner is not under sentence of death. State procedures designed to insure that the death penalty is imposed only after the most careful regard for

proper procedures have by no means been exhausted.

■■ The immediate question is not whether petitioner's federally protected rights have already been violated but whether the fact that a fourth penalty trial is held would in itself be a violation of his rights. Petitioner argues it would be cruel and unusual punishment to be subjected to the mental ordeal of another trial. As a general proposition having to sit through a trial may be an onerous burden for a defendant, but it is not a cruel and certainly not an unusual punishment. No evidence, except slight inferences, has been produced to establish that for petitioner specifically to undergo another trial would be such a punishment. Moreover, there are state procedures to determine whether petitioner is fit to stand trial again.

Petitioner also argues that the fourth trial cannot be fair because of the passage of time. This defect, if it exists, could be urged on appeal if a death verdict is imposed. It may be that the record of the fourth trial read in the context of the totality of the circumstances of this case will reveal that a fair hearing was impossible despite the good faith of all participants. But that is a matter to be decided after the trial, and, at least initially, by the state courts.

■ A final point should be mentioned. The same deputy district attorney has committed prejudicial misconduct in three separate trials in this case. For this reason, the state courts may decide that a fourth trial should not be had. Or it may be that if the conduct is repeated at the fourth trial, the state courts will decide that in the interests of justice another trial should not be held. Certainly the California authorities should now be on notice that there is a constitutional limit to the number of times a man must undergo a trial where his life is at stake, and where one of the reasons for the repeated trials is deliberate misconduct by the prosecutor.

For the foregoing reasons, the petition for relief is denied.