Filed 7/24/14  P. v. Pleasant CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>                v.<br><br>TERRY KEITH PLEASANT,<br><br>        Defendant and Appellant. | F067102<br><br>(Super. Ct. No. CRM022849)<br><br>**OPINION** |

-ooOoo-

## THE COURT\*

APPEAL from a judgment of the Superior Court of Merced County.  Ronald W. Hansen, Judge.

Derek K. Kowata, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Stephen G. Herndon and Henry J. Valle, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*        Before Kane, Acting P.J., Detjen, J. and Peña, J.

A jury convicted appellant Terry Keith Pleasant of making criminal threats (Pen. Code, § 422;[1] count 1), battery resulting in infliction of serious bodily injury (§ 243, subd. (d); count 3), assault by means of force likely to cause great bodily injury (§ 245, subd. (a)(4); count 4), and misdemeanor false imprisonment (§§ 236, 237, subd. (a)), a lesser included offense of false imprisonment by violence or menace, a felony (§§ 236, 237, subd. (a), 1170, subd. (h)), charged in count 2. In a separate proceeding, the court found true enhancement allegations that appellant had served four separate prison terms for prior felony convictions (§ 667.5, subd. (b)).

The court imposed a prison term of eight years, consisting of the four-year upper term on appellant's battery conviction and one year on each of the four prior prison term enhancements. On counts 1 and 4, the court imposed, and stayed pursuant to section 654, respectively, terms of three and four years. The court imposed a concurrent six-month term on appellant's misdemeanor false imprisonment conviction.

On appeal, appellant contends the imposition of sentence on both the battery and false imprisonment convictions violated the section 654 proscription against multiple punishment. We affirm.

<strong>FACTS</strong>[2]

*Background*

At the time of trial, Michelle Turner had known appellant for approximately 23 years.[3] She had been married to his brother. She had not seen appellant in approximately 10 years, when, in February 2012, he came to her door. Appellant's mother had recently died, and Turner, in an effort to "be a friend," at first allowed him to stay with her.

---

[1] All statutory references are to the Penal Code.

[2] Because appellant's contention on appeal relates only to the sentence imposed on his battery and false imprisonment convictions, we limit our factual summary, for the most part, to those offenses.

[3] Except as otherwise indicated, our factual summary is taken from Turner's testimony.

However, appellant "just more or less took over [her] house," became "possessive" and "[c]ontrolling," and, although she told him several times he could not stay with her, he "[j]ust would not leave."

### *Battery Resulting in Infliction of Serious Bodily Injury*

On one occasion, appellant pushed Turner "[h]ard enough" to cause her to fall. When she fell, she hit her knee on the rail of a bed, cutting her knee so deep "[y]ou could see the bone." The wound required 22 stitches.

According to the records of Mercy Medical Center Hospital in Merced (hospital), on April 1, 2012, Turner was treated at the hospital and received "[l]eft knee laceration repair" for a wound "over the left patella with some exposed bone."

### *False Imprisonment*

Appellant "[would] not let [Turner] out of the house." To prevent her from leaving the house, he would "[g]et in front of the door," punch her and tell her she "ain't going … anywhere." Turner "would try to get outside the door," but the "garage door would be locked."

"Several times," on "[d]ifferent days," appellant "wouldn't let [Turner]" leave the house. He would "block [her] from leaving" by standing in front of the door. This happened at least four or five times.

Appellant "tr[ied] to keep [Turner] locked up inside the house" by "keeping things in front of the bedroom door." He would "make sure [Turner] and [appellant] were in the room and he would have things up against the bedroom door that barred [the door]." Turner had "weights and [a] long bar," and appellant put 25-pound weights "underneath so the door wouldn't be wedged open."

On one occasion Turner "needed to get away" and was trying to leave the house to go visit a girlfriend, but appellant "said [she] wasn't going anywhere" and punched her in the face. She landed on her knee. "[T]hat … stopped [her] from going anywhere." At the time of this incident, she "had stitches still."

3

On the morning of another day, appellant "threw hot water … from the coffee pot" on Turner and "[b]ody slammed [her] on the ground." Turner "knew that day [she] had to find a way to get out." At about 9:00 or 10:00 p.m. appellant fell asleep. "He had an arm and leg on [Turner] to make sure [she would] stay right there," but Turner was able to "slid[e] out [of] the bed" and go next door to her daughter's house. Her daughter called the police.

Dominic Lara testified to the following. He is married to Turner's daughter and at one time he and his wife lived next door to Turner. On or about May 8, 2012, during the night, she came to their house. She was "very nervous, scared." A short time later, Lara heard appellant yelling and banging on the wall. Lara called the police.

## DISCUSSION

Appellant contends the "the false imprisonment … was incidental to the battery," both offenses were "committed with the same criminal intent and objective," viz., "to control" Turner, and therefore the court erred in failing to stay the term imposed on the false imprisonment conviction pursuant to section 654. We disagree.

*Legal Background*

Section 654, subdivision (a) provides, in relevant part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." Our Supreme Court has "often said that the purpose of section 654 'is to insure that a defendant's punishment will be commensurate with his culpability.'" (*People v. Latimer* (1993) 5 Cal.4th 1203, 1211 (*Latimer*).) Section 654 "does not allow any multiple punishment, including either concurrent or consecutive sentences." (*People v. Deloza* (1998) 18 Cal.4th 585, 592.)

As indicated above, under the plain language of the statute, multiple punishment may not be imposed for a single "act or omission." (§ 654, subd. (a).) However, "[c]ase

4

law has expanded the meaning of section 654 to apply to more than one criminal act when there was a course of conduct that violates more than one statute but nevertheless constitutes an indivisible transaction." (*People v. Hairston* (2009) 174 Cal.App.4th 231, 240.)

In determining whether a course of conduct consisting of multiple acts is indivisible, we look to the "defendant's intent and objective." (*People v. Harrison* (1989) 48 Cal.3d 321, 335 (*Harrison*).) "[I]f all of the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once." (*Ibid*.) On the other hand, "[i]f [the defendant] entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct." (*People v. Beamon* (1973) 8 Cal.3d 625, 638-639.)

"[D]ecisions ... have refined and limited application of the 'one intent and objective' test, in part because of concerns that the test often defeats its own purpose because it does not necessarily ensure that a defendant's punishment will be commensurate with his culpability." (*People v. Kwok* (1998) 63 Cal.App.4th 1236, 1253.) Thus, as our Supreme Court noted in *Latimer*, cases decided since the intent and objective rule was announced in *Neal v. State of California* (1960) 55 Cal.2d 11 have "limited the rule's application in various ways," including, in some cases, by "narrowly interpret[ing] the length of time the defendant had a specific objective, and thereby found similar but *consecutive* objectives permitting multiple punishment." (*Latimer*, *supra*, 5 Cal.4th at pp. 1211-1212.) These cases include *People v. Louie* (2012) 203 Cal.App.4th 388, where the court rejected a section 654 based challenge to the imposition of sentence on multiple offenses, stating: "[W]here a course of conduct is divisible in time it may give rise to multiple punishment even if the acts are directive to one objective. [Citation.]

5

If the separation in time afforded defendants an opportunity to reflect and to renew their intent before committing the next crime, a new and separate crime is committed." (*People v. Louie*, *supra*, at p. 399.)  Another such case is *People v. Trotter* (1992) 7 Cal.App.4th 363, 368 (*Trotter*).

In *Trotter*, the defendant was punished separately for two of three gunshots fired at a pursuing police officer.  On appeal, the court rejected the defendant's claim of a single objective—"to force [the pursuing officer] to break off his pursuit" (*Trotter*, *supra*, 7 Cal.App.4th at p. 367) and thereby avoid apprehension—and concluded it was proper to punish him separately for the first two shots, which were fired within one minute of each other.  The court observed:  "[T]his was not a case where only one volitional act gave rise to multiple offenses.  Each shot required a separate trigger pull.  All three assaults were volitional and calculated, and were separated by periods of time during which reflection was possible.  None was spontaneous or uncontrollable.  'Defendant should … not be rewarded where, instead of taking advantage of an opportunity to walk away from the victim, he voluntarily resumed his … assaultive behavior.'"  (*Id*. at p. 368, citing *Harrison*, *supra,* 48 Cal.3d at p. 338.)

When a trial court sentences a defendant for two crimes, without suspending execution of sentence, the judge implicitly finds the acts involved more than one objective.  (See *People v. Osband* (1996) 13 Cal.4th 622, 730.)  "A trial court's express or implied determination that two crimes were separate, involving separate objectives, must be upheld on appeal if supported by substantial evidence."  (*People v. Brents* (2012) 53 Cal.4th 599, 618.)  "We review the trial court's findings 'in a light most favorable to the respondent and presume in support of the order the existence of every fact the trier could reasonably deduce from the evidence.'"  (*People v. Green* (1996) 50 Cal.App.4th 1076, 1084.)

*Analysis*

The evidence shows appellant committed the battery[4] on April 1, 2012. The evidence is less clear as to the date(s) on which appellant falsely imprisoned Turner,[5] but from the evidence the following is fairly inferable.

First, on at least four occasions, on "different days," appellant stood in front of the door to Turner's house, blocking the way and preventing her from leaving the house. Second, some time intervened between the battery and the incident in which appellant prevented Turner from leaving the house to go visit a friend by punching her and telling her she was not going "anywhere," a fact inferable from the evidence that she had stitches at the time of the latter incident and she had received the stitches as a result of the battery. Third, on multiple occasions appellant barricaded the bedroom door with weights, preventing Turner from leaving. Fourth, on at least one occasion, he locked the garage door so Turner could not leave. Fifth, on May 8, 2012, after assaulting Turner in the morning, appellant placed an arm and a leg on Turner when the two were in bed, in an attempt to keep her from leaving, which was successful until he fell asleep.

From the foregoing, it is also reasonably inferable that the battery and one or more of the acts of false imprisonment were separate volitional acts, between which appellant had an opportunity—indeed, it appears, at least days—to reflect. Substantial evidence thus supports the court's implied finding that the battery and false imprisonment of which

---

[4] The elements of battery are "willful and unlawful use of force or violence upon the person of another." (§ 242.)

[5] False imprisonment is defined as "the unlawful violation of the personal liberty of another." (§ 236.) "'Any exercise of force, or express or implied threat of force, by which in fact the other person is deprived of his liberty or is compelled to remain where he does not wish to remain, or to go where he does not wish to go, is an imprisonment. The wrong may be committed by acts or by words, or both, and by merely operating upon the will of the individual or by personal violence, or both.'" (*People v. Agnew* (1940) 16 Cal.2d 655, 659-660.)

appellant stands convicted, like the offenses at issue in *Trotter*, were not part of an indivisible course of conduct.

Appellant argues we may not infer that the court made an implied finding that the battery and false imprisonment were not part of an indivisible course of conduct because the court found that the battery, the count 1 criminal threats and the count 4 assault *were* part of an indivisible course of conduct. To address this contention, we set forth the relevant procedural background.

The court stated: "In evaluating this case on whether or not there is a course of conduct that violates more than one statute but constitutes an indivisible transaction, my personal feelings are that Counts 1 [criminal threats] and 4 [aggravated assault] are subject to [section] 654. But I'll listen to arguments."

There followed an exchange between the court and the prosecutor, which included the following:

"THE COURT: I'm focused on it's a course of conduct.

"MR. SERRATO [prosecutor]: I think there is a course of conduct.

"THE COURT: I think it's a course of conduct to control her.

"MR. SERRATO: I believe so. To me it's aggravated because the ongoing level, the intensity of the desire to control her, and it's ongoing domestic violence.

"THE COURT: But that supports my [section] 654 analysis. It's kind of an indivisible, ongoing thing. It's incident to a single objective and [the] objective is to control Ms. Turner.

"MR. SERRATO: Sure. Essentially to move into her house and take over.

"THE COURT: Take over the house, right."

The court concluded: "I think the principal count that the Court is going to select is Count 3 [battery], but Counts 1 and 4 are subject to [section] 654 and those sentences have to be stayed."

8

The court's remarks and its finding set forth above related to the applicability of section 654 to the count 1 and count 4 offenses only. The court made no mention of the sentence imposed on the false imprisonment conviction. As indicated above, where, as here, a sentencing court imposes concurrent terms, the court has made an implied finding that those offenses were not committed pursuant to a single intent and objective. This conclusion is strengthened by the following basic tenet of appellate review: "'A judgment or order of the lower court is *presumed correct. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.* This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.'" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564, second italics added.)

The People have not raised an appellate challenge to the court's finding that section 654 precluded imposition of sentence on counts 1 and 4, and we express no opinion as to the correctness of that finding. We do conclude the court impliedly found that the battery and false imprisonment were not part of an indivisible course of conduct and, as demonstrated above, that finding was supported by substantial evidence. Accordingly, we reject appellant's claim that the sentence imposed violated section 654.

## DISPOSITION

The judgment is affirmed.