Filed 6/27/22 P. v. Hamilton CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C091093 |
| Plaintiff and Respondent, | (Super. Ct. No. 18FE017620) |
| v. | ORDER MODIFYING OPINION AND DENYING REHEARING |
| JOHN WINSTON HAMILTON, | |
| Defendant and Appellant. | [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed in this case on June 10, 2022, be modified as follows:

On page 7, last sentence before part II, after the sentence ending in "counts 1 through 4," insert the following sentence:

In light of the above, we reject defendant's claim that the trial court's evidentiary ruling violated his federal constitutional rights to due process, confrontation and to present a defense.

1

On page 10, last sentence before part III, after the *People v. Katzenberger* citation, insert the following sentence:

Because we reject defendant's claim of prosecutorial misconduct, we also reject his constitutional due process claim. Further, having failed to demonstrate error in the exclusion of evidence regarding G.D.'s HIV status and his claim of prosecutorial misconduct, defendant's claim of cumulative prejudice is also rejected.

On page 12, last sentence before part IV, after the sentence ending in "independent of the other offenses," insert the following sentence:

Defendant's associated federal due process claim is rejected.

On page 14, last sentence before the Disposition, remove "We will not remand the matter for resentencing" and replace with the following sentence:

We will not remand the matter for resentencing and reject defendant's claim, made in a perfunctory manner, that his sentence violated his federal due process rights.

This modification does not change the judgment.

The petition for rehearing is denied.

FOR THE COURT:


_____/S/_____
MAURO, Acting P. J.


_____/S/_____
DUARTE, J.


_____/S/_____
KRAUSE, J.

Filed 6/10/22  P. v. Hamilton CA3 (unmodified opinion)

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>JOHN WINSTON HAMILTON,<br><br>　　　　Defendant and Appellant. | C091093<br><br>(Super. Ct. No. 18FE017620) |

　　　　A jury convicted John Winston Hamilton of assault with intent to commit forcible sodomy, forcible oral copulation and/or forcible sexual penetration, forcible sodomy, forcible oral copulation, forcible sexual penetration, criminal threat, first degree robbery, false imprisonment, unlawfully taking and driving a stolen vehicle, and evasion of law enforcement.  The trial court found true an allegation that defendant had two prior serious and violent felony convictions, and it sentenced defendant to a determinate prison term of 32 years 4 months, plus an indeterminate term of 100 years to life.

　　　　Defendant now contends (1) the trial court erred in excluding evidence relating to the human immunodeficiency virus (HIV) status of the victim, (2) the prosecutor

1

committed misconduct by misstating the burden of proof in closing argument, and (3) the separate sentence imposed on count 7 (false imprisonment) must be stayed under Penal Code section 654.[1]  In supplemental briefing, defendant argues (4) the matter should be remanded for resentencing because of a recent amendment to section 654.

We conclude (1) defendant has not demonstrated that the victim's conduct evinced moral turpitude and was, therefore, relevant to credibility, (2) the challenged remarks by the prosecutor were not misconduct, (3) it was reasonable for the trial court to impliedly find that hog-tying the victim evinced a criminal objective independent of the intent in committing the sexual offenses and robbery, and (4) amended section 654 applies to defendant's case but remand is not necessary.  We will affirm the judgment and direct the trial court to correct the abstract of judgment.

## BACKGROUND

G.D. solicited defendant for sex using a cell phone app.  The two went to G.D.'s home, smoked methamphetamine supplied by G.D., and had consensual sex.

After the consensual sexual encounter, defendant hit G.D. repeatedly, saying "[w]e can do this the easy way or the hard way."  With his hands around G.D.'s throat, defendant demanded "easy way or hard way" and threatened to kill G.D. until G.D. said he wanted the "easy way."

Defendant asked G.D. how much money was in the house.  He resumed hitting G.D. when G.D. said he only had $30.  G.D. then admitted he had $400.

When G.D. tried to run for the front door, defendant punched G.D. and put him in a chokehold so that G.D. could not breathe.  He forced G.D. to perform oral sex on him. He penetrated G.D.'s anus with his finger and tongue multiple times.  He also penetrated G.D.'s anus with his penis.  G.D. did not consent to those sexual acts.

---

[1] Undesignated statutory references are to the Penal Code.

Defendant bound G.D.'s wrists behind his back with zip ties and placed handcuffs tightly around G.D.'s ankles. He later used a dog leash to hog-tie G.D. G.D. occasionally lost consciousness, but he saw defendant searching the bedroom and heard defendant searching the rest of the house. At some point, defendant put on a mask and gloves and again threatened to kill G.D.

When G.D. heard the front door close and believed defendant had left, G.D. freed himself and ran outside to summon aid. Someone called 911.

Video from a surveillance camera in G.D.'s bedroom was shown to the jury.[2] The camera was motion-activated. It shows defendant beating G.D. and performing an act of forcible sodomy following the beating. There was an hour and a half gap between the time defendant began beating G.D. and when he sodomized G.D. in the bedroom. The video does not show defendant forcing G.D. to orally copulate him or defendant digitally penetrating G.D. with his fingers. G.D. testified the surveillance camera did not record all of the acts by defendant.

G.D. told responding police officers that defendant raped him or tried to rape him. He told a police detective that defendant sodomized him with a finger and forced him to orally copulate defendant. He said the sexual assault occurred in the bedroom and reported "fading out" multiple times.

G.D. did not report that some of the acts of sexual assault occurred in the living room until his second interview with the detective. At trial, G.D. explained he did not have a full memory of the offenses because he had suffered a head injury, lost consciousness and was terrified.

---

[2] The People filed a motion to augment the record on appeal to include People's Exhibit 79, a CD containing footage from the surveillance camera video. We treated the People's motion as a request to send an exhibit to this Court under California Rules of Court, rule 8.224, and granted the People's request.

A nurse conducted a Sexual Assault Response Team (SART) examination of G.D. G.D. did not report any memory loss or lapse of consciousness but said he had taken drugs involuntarily. He reported that defendant's penis and finger penetrated his anus, he was not sure if he was sodomized by other objects, defendant forced him to orally copulate defendant, defendant orally copulated him and defendant orally copulated his anus.

G.D. sustained bilateral nasal bone fractures and bruising on his head, face and neck. He had abrasions on his chest, lower back and arm and around both ankles, and there was tenderness and swelling on his right wrist. His rectum was bruised and red.

Video from G.D.'s doorbell camera showed defendant putting things in G.D.'s car. Officers later located the car with defendant in the driver's seat. Defendant did not heed orders to get out of the car. Instead, he led officers on a chase, driving in excess of 90 miles per hour. The pursuit ended when defendant crashed into the side of a bridge. Items taken from G.D.'s home were in the car.

The jury convicted defendant of assault with intent to commit forcible sodomy, forcible oral copulation and/or forcible sexual penetration (count 1—§ 220), forcible sodomy (count 2—§ 286, subd. (c)(2)), forcible sexual penetration (count 3—§ 289, subd. (a)(1)), forcible oral copulation (count 4—former § 288a, subd. (c)(2)), criminal threat (count 5—§ 422), first degree robbery (count 6—§ 211), false imprisonment (count 7—§ 236), unlawfully taking and driving a stolen vehicle (count 8—Veh. Code, § 10851, subd. (a)), and evasion of law enforcement (count 9—Veh. Code, § 2800.2, subd. (a)). The trial court found true beyond a reasonable doubt that defendant had two prior serious and violent felony convictions.

The trial court denied defendant's motion to dismiss the prior conviction allegations. It imposed but stayed sentence on the convictions for counts 1, 5 and 8, imposed an aggregate determinate prison term of 32 years 4 months, and also imposed an indeterminate term of 100 years to life.

4

## DISCUSSION

### I

Defendant contends the trial court erred in excluding evidence that G.D. was HIV positive. Defendant claims exposing defendant to HIV during the consensual part of their encounter was an act of moral turpitude relevant to impeaching G.D.'s credibility.

### A

The People moved in limine to exclude evidence of G.D.'s HIV-positive status. Defendant opposed the motion. The trial court granted the prosecutor's motion under Evidence Code section 352. It said there was video showing much of what happened, G.D.'s credibility will be determined by the video, and evidence of G.D.'s HIV status for impeachment purposes was tangential. The trial court explained that the jury would hear other impeaching evidence and whether G.D. was HIV positive would only confuse the jury and potentially inflame its passion.[3] The judge also pointed out that there was no evidence G.D. purposefully engaged in sexual activity for the purpose of infecting defendant with HIV.

### B

"A witness may be impeached with any prior conduct involving moral turpitude whether or not it resulted in a felony conviction, subject to the trial court's exercise of discretion under Evidence Code section 352. [Citations.] [¶] '[T]he admissibility of any past misconduct for impeachment is limited at the outset by the relevance requirement of moral turpitude. Beyond this, the latitude [Evidence Code] section 352 allows for

---

[3] Defense counsel indicated he would impeach G.D. with evidence that G.D. violated Health and Safety Code section 11379 (furnishing a controlled substance) and Penal Code sections 647, subdivision (j)(3)(A) (using a concealed camera to secretly videotape a person who may be in a state of undress without the consent or knowledge of the person) and 632 (using a recording device to record a confidential communication without the consent of all parties).

exclusion of impeachment evidence in individual cases is broad.' " (*People v. Clark* (2011) 52 Cal.4th 856, 931.)

We review a trial court's ruling on the admissibility of evidence under the deferential abuse of discretion standard. (*People v. Hamilton* (2009) 45 Cal.4th 863, 929-930.) Under that standard, we examine the record in the light most favorable to the trial court's decision. (*People v. Edwards* (2013) 57 Cal.4th 658, 711; *People v. Fuiava* (2012) 53 Cal.4th 622, 711.) We will not disturb the trial court's decision except on a showing that it exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124.)

Defendant argues G.D.'s conduct was an act of moral turpitude because it violated statutes that criminalize specified sexual acts where it was known to the defendant that there was an inability to resist because the victim was unconscious or asleep, did not know that the sexual act occurred, or did not know the essential character of the sexual act due to the perpetrator's fraud. (§ 286, subd. (f); former § 288a, subd. (f) [now § 287, subd. (f)]; § 289, subd. (d); § 261, subd. (a)(4).) But nothing in the record establishes that G.D. violated those statutes.

Defendant also claims G.D. violated section 245, subdivision (a)(4) [assault with force likely to produce great bodily injury]. Again, however, the record does not support defendant's claim. In addition, defendant fails to demonstrate that G.D.'s conduct involved implied malice. It is the appellant's burden to prove trial court error by presenting legal authority and factual analysis on each point. (*People ex rel. Reisig v. Acuna* (2017) 9 Cal.App.5th 1, 25.)

In any event, the surveillance camera video partially corroborated G.D.'s testimony. The jurors were able to personally judge G.D.'s demeanor and credibility. (*People v. Ghebretensae* (2013) 222 Cal.App.4th 741, 752.) And defendant attacked G.D.'s credibility during cross-examination and in closing argument. Defendant fails to

6

show the excluded evidence would have changed the jury's assessment of G.D.'s credibility or the verdicts on counts 1 through 4.

## II

Defendant next contends the prosecutor committed misconduct by misstating the burden of proof in closing argument.

## A

At the start of closing arguments, the trial court told the jury that the People bore the burden of proving defendant's guilt beyond a reasonable doubt. In his closing argument, the prosecutor said, "Reasonable doubt, that's the standard by which I have to prove all this evidence to you. It's not imaginary doubt. This is not about writing a novel or coming up with something fantastical to rearrange the evidence. Your deliberations by law and by duty have to be confined to what you heard in this courtroom. So it's not fair to the defendant if you consider something outside this courtroom. It's not fair to the People. It has to be based on the evidence, the testimony and the other items we have provided. Okay? So it's not something to imagine. It's not something hypothetical where you can try to create some other scenario. It's not beyond a shadow of a doubt. That's not the case law. That's not the standard. It's a reasonable doubt. It's the same standard used in every single criminal case in this country, and when it is defined, it's a little difficult to define because all this legal language is a little odd, but the way it is defined, it is an abiding conviction. What that means is a long-lasting belief that the defendant committed the crime."

## B

To preserve a claim of prosecutorial misconduct for appeal, a defendant must make a timely objection at trial on the ground raised on appeal and request that the jury be admonished to disregard the impropriety. (*People v. Covarrubias* (2016) 1 Cal.5th 838, 894 (*Covarrubias*).) " 'The purpose of the rule requiring the making of timely objections is remedial in nature, and seeks to give the [trial] court the opportunity to

7

admonish the jury, instruct counsel and forestall the accumulation of prejudice by repeating improprieties, thus avoiding the necessity of a retrial. . . .' " (*People v. Brown* (2003) 31 Cal.4th 518, 553.) Defendant did not object to the prosecutor's remarks that he challenges on appeal nor request an admonition. His claim of prosecutorial misconduct is, therefore, forfeited. (*People v. Centeno* (2014) 60 Cal.4th 659, 674 (*Centeno*) ["A prosecutor's misstatements of law are generally curable by an admonition from the court"].)

Nevertheless, because defendant asserts ineffective assistance, we conclude that the prosecutor did not commit misconduct, defense counsel did not act deficiently in failing to object, and the challenged comments did not prejudice defendant. "In evaluating a claim of prejudicial misconduct based upon a prosecutor's comments to the jury, we decide whether there is a reasonable possibility that the jury construed or applied the prosecutor's comments in an objectionable manner." (*People v. Valdez* (2004) 32 Cal.4th 73, 132-133.) We consider the challenged comment in the context of the whole argument and the jury instructions and " ' "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.' " (*Covarrubias, supra,* 1 Cal.5th at p. 894; *Centeno, supra,* 60 Cal.4th at p. 667.)

The challenged portion of the prosecutor's argument is consistent with section 1096, which defines reasonable doubt as " 'not a mere possible doubt; because everything relating to human affairs is open to some possible or imaginary doubt. It is that state of the case, which, after the entire comparison and consideration of all the evidence, leaves the minds of jurors in that condition that they cannot say they feel an abiding conviction of the truth of the charge.' " "Abiding" means lasting and permanent. (*People v. Brigham* (1979) 25 Cal.3d 283, 290; *People v. Pierce* (2009) 172 Cal.App.4th 567, 572-574 [concluding that even if prosecutorial misconduct claim had not been forfeited, prosecutor's remark regarding an "abiding conviction" was not misconduct because the

statement evoked permanence and a conviction that would not change].) In his closing statement, defense counsel agreed with the prosecutor that an abiding conviction meant a long-lasting belief or certainty that a charge was true. (See also *People v. Cortez* (2016) 63 Cal.4th 101, 131 [it was a correct statement of the law to tell the jury that its conclusions must be based on evidence rather than imagination]; *Centeno, supra*, 60 Cal.4th at p. 669 [a jury may only decide guilt based on the evidence and may not go beyond the record to supply facts that have not been proved].)

The trial court properly instructed the jury under CALCRIM No. 220 that proof beyond a reasonable doubt "is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt. [¶] In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that was received throughout the entire trial. Unless the evidence proves the defendant guilty beyond a reasonable doubt, he is entitled to an acquittal and you must find him not guilty. The trial court told the jury to follow the law as the trial court had explained it and if the jury believed the attorneys' comments on the law conflicted with the trial court's instructions, the jury must follow the trial court's instructions. " '[A]rguments of counsel "generally carry less weight with a jury than do instructions from the court. The former are usually billed in advance to the jury as matters of argument, not evidence [citation], and are likely viewed as the statements of advocates; the latter, we have often recognized, are viewed as definitive and binding statements of the law." [Citation.]' [Citation.] 'When argument runs counter to instructions given a jury, we will ordinarily conclude that the jury followed the latter and disregarded the former, for "[w]e presume that jurors treat the court's instructions as a statement of the law by a judge, and the prosecutor's comments as words spoken by an advocate in an attempt to persuade." [Citation.]' " (*People v. Katzenberger* (2009) 178 Cal.App.4th 1260, 1268.)

9

III

Defendant further argues the separate sentence imposed for the count 7 conviction for false imprisonment must be stayed under section 654 because the acts constituting false imprisonment were part of the same overall course of conduct as the sexual offenses charged in counts 2 through 4 and the robbery charged in count 6.

Section 654 protects against multiple punishment where the same act or omission or " 'a course of conduct deemed to be indivisible in time' " results in multiple statutory violations. (*People v. Harrison* (1989) 48 Cal.3d 321, 335.) A defendant's intent and objective determine whether multiple punishment is permissible. (*Ibid.*) "[I]f all of the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, [the] defendant may be found to have harbored a single intent and may be punished only once. [Citation.] [¶] If, on the other hand, [the] defendant harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other, he [or she] may be punished for each statutory violation committed in pursuit of each objective, 'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.' " (*Ibid.*) Cases have found separate objectives when the objectives were different, even if they were simultaneous. (*People v. Britt* (2004) 32 Cal.4th 944, 952.)

A defendant's intent and objective and, thus, whether section 654 applies, are factual questions for the trial court. (*People v. Coleman* (1989) 48 Cal.3d 112, 162 (*Coleman*); see *People v. Vang* (2010) 184 Cal.App.4th 912, 915-916.) We will not reverse the trial court's determination that the defendant harbored multiple criminal objectives if there is any substantial evidence to support it. (*People v. Brents* (2012) 53 Cal.4th 599, 618; *Vang,* at p. 916.) " 'We review the trial court's determination in the light most favorable to the respondent and presume the existence of every fact the trial court could reasonably deduce from the evidence. [Citation.]' " (*Vang,* at p. 916.)

10

The probation officer's report recommended staying the sentences on counts 1 (assault with intent to commit sodomy or oral copulation), 5 (criminal threat) and 8 (taking or driving stolen vehicle) under section 654 but made no stay recommendation as to count 7 (false imprisonment). The trial court imposed but stayed the sentence on counts 1, 5 and 8 and imposed a term of 16 months on count 7. G.D.'s testimony and the surveillance camera video constitute substantial evidence supporting the trial court's implied finding that defendant harbored multiple criminal objectives warranting separate punishment on the false imprisonment, robbery and sexual offense counts.

"Any exercise of force, or express or implied threat of force, by which in fact the other person is deprived of his liberty or is compelled to remain where he does not wish to remain . . . is an imprisonment." (*People v. Agnew* (1940) 16 Cal.2d 655, 659-660.) The prosecutor told the jury the false imprisonment count was based on defendant hog-tying G.D. and that defendant hog-tied G.D. to prevent G.D. from escaping. G.D. testified that defendant's crimes began with the beating and sexual assault. The surveillance camera video shows that some time passed between when G.D.'s hands were bound and when he was hog-tied. There is no evidence that defendant committed a sexual offense after he hog-tied G.D. Therefore, it was reasonable for the trial court to impliedly find that the false imprisonment (hog-tying) was not a means of committing, or incidental to, the sexual offenses. (*Coleman, supra,* 48 Cal.3d at pp. 162-163; *People v. Saffle* (1992) 4 Cal.App.4th 434, 438-440; *People v. Manning* (1982) 133 Cal.App.3d 159, 169.)

Moreover, although defendant threatened G.D. and rummaged through the bedroom after hog-tying him, the hog-tying was not a means of committing those offenses because defendant's hands and ankles were already bound. (See *People v. Nguyen* (1988) 204 Cal.App.3d 181, 191 ["Once robbers have neutralized any potential resistance by the victims, an assault or attempt to murder to facilitate a safe escape, evade prosecution, or for no reason at all, may be found by the trier of fact to have been done

for an independent reason"].) However, although G.D.'s hands were already bound and his ankles were already handcuffed, the trial court could have reasonably found that defendant hog-tied G.D. to prevent him from hopping away and summoning the police and to further terrorize him, and that defendant acted with a criminal objective independent of the other offenses.

IV

In supplemental briefing, defendant contends we should remand the matter to allow the trial court to exercise its discretion under recently amended section 654.

At the time of defendant's sentencing, section 654 provided that an act or omission punishable in different ways by different provisions of law shall be punished under the law that provided for the longest potential term of imprisonment. (Stats.1997, ch. 410, § 1.) Effective January 1, 2022, Assembly Bill No. 518 (2021-2022 Reg. Sess.) amended section 654 to afford sentencing courts discretion to choose the count for which it will stay punishment, allowing the trial court to stay the longer rather than the shorter term of imprisonment after imposing punishment. (Stats. 2021, ch. 441, § 1.)

The trial court imposed but stayed the sentences on counts 1, 5 and 8, finding that counts 1 and 5 were part of the same course of conduct as counts 2 through 4 and that counts 6 and 8 involved a continuous course of criminal conduct. Had the current version of section 654 been in effect at the time of defendant's sentencing, the trial court would have had the discretion to stay the indeterminate life sentences in counts 2 through 4 and 6.

The parties agree that defendant is entitled to the ameliorative benefit of newly amended section 654 because defendant's appeal was not yet final when the amended statute took effect. We agree that amended section 654 applies to defendant's appeal. (*In re Estrada* (1965) 63 Cal.2d 740, 744-745; see also *People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299, 307-309.) "Absent evidence to the contrary, amendments to statutes that reduce the punishment for a crime or vest in trial courts the discretion to

12

impose a lesser penalty . . . apply to all defendants whose judgments are not final as of the amendment's effective date." (*People v. Jones* (2019) 32 Cal.App.5th 267, 272 (*Jones*).) Assembly Bill No. 518 did not indicate that the Legislature intended the amendment to section 654 to apply prospectively only. (Stats. 2021, ch. 441, § 1.)

Defendant claims we should remand this matter so the trial court can exercise its discretion under amended section 654 and reconsider the entire sentence. According to the People, remand is unnecessary because the trial court clearly indicated an intent to impose the maximum prison term possible. Defendant did not file a supplemental reply brief despite having been provided with the opportunity to do so. We agree with the People.

"Generally, when the record shows that the trial court proceeded with sentencing on the erroneous assumption it lacked discretion, remand is necessary so that the trial court may have the opportunity to exercise its sentencing discretion at a new sentencing hearing." (*People v. Brown* (2007) 147 Cal.App.4th 1213, 1228.) Remand is required unless the record clearly indicates that the trial court would not have reduced the sentence even if it had been aware that it had such discretion at the time of sentencing. (*Jones, supra*, 32 Cal.App.5th at p. 273; *People v. McVey* (2018) 24 Cal.App.5th 405, 418-419 (*McVey*).) We review the sentencing court's statements and sentencing decisions to infer what its intent would have been. (*Jones,* at p. 273.)

The trial court found no mitigating circumstances and many aggravating factors, it declined to dismiss the enhancement allegations, and it said this was an upper term case and that defendant should be incarcerated for the rest of his life. The trial court imposed full separate, consecutive sentences of 25 years to life in prison pursuant to section 667, subdivision (e)(2)(A)(ii) on counts 2 through 4 and a separate 25-year-to-life prison

sentence on count 6.**4**  In light of the statements by the trial court at the sentencing hearing and its sentencing choices, we conclude the trial court would stay the shorter sentences in counts 1, 5 and 8 rather than staying the longer sentences in counts 2 through 4 or 6 even if the trial court believed it had discretion to do so when it sentenced defendant.  (See *McVey, supra*, 24 Cal.App.5th at pp. 418-419; *People v. Gutierrez* (1996) 48 Cal.App.4th 1894, 1896.)  We will not remand the matter for resentencing.

## DISPOSITION

The judgment is affirmed.  The trial court shall correct the abstract of judgment to state that defendant was sentenced to indeterminate terms of 25 years to life on counts 2, 3, 4, and 6, and to forward a certified copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.

_____/S/_____
MAURO, Acting P. J.

We concur:

_____/S/_____
DUARTE, J.

_____/S/_____
KRAUSE, J.

_____

**4** The abstract of judgment states that defendant was sentenced to indeterminate terms of 25 years to life on counts 1 through 6.  This must be corrected to state that defendant was sentenced to indeterminate terms of 25 years to life on counts 2, 3, 4, and 6.